## Browne v. Burnett

*Lawrence Stone,* for plaintiff.

DOWLING, *J.,* January 30, 1984 — Normally, in routine ex parte proceedings, we have the unusual situation of opposition to a petition to change name. It is as though someone were to take issue with the remarks made at a memorial service. Entering its

14th year, this court can recall only one such previous experience,[1] and in it, the Bench sua sponte provided the challenge when it refused to lend its legal imprimatur to the request of a transvestite christened "Percy" to be legally known as "Diane Diane".[2]

Here the contest is raised by the natural father to the mother's request joined in by the children, ages twelve and nine, to have their names reflect that of their mother's new spouse. Oh, it is not such a drastic change, being from Burnett to Browne, but like Mercutio's wound, "tis enough." The reasons advanced are that it would be in the best interests of the children psychologically and socially to bear the same surname as their mother, and that such a rechristening would, in addition to providing uniformity, avoid possible ridicule and embarrassment as well as the appearance of illegitimacy.

Mr. Burnett is very much opposed. For one reason, he has for the past seven years paid $70 biweekly in support of the two children. He also feels that this name change will further alienate him from his children's affections; nor is he sanguine about the durability of his wife's second marriage.

Section 3 of the Act of 1923,[3] sets forth the conditions under which we may approve the proposed change of name:

"If the Court be satisfied after such hearing that there is no lawful objection to the granting of the prayer of said petition, a decree may be entered by

---

1. We must confess, however, that our research preparatory to writing this opinion has disclosed a surprising number of cases dealing with this issue so that it would seem that our experience is by no means universal.

2. 103 Dauphin 453 (1982).

3. 54 P.S. §1, et seq.

said Court changing the name as prayed for. . ."
Thus, the matter is for the court's discretion, which it must exercise with "fairness to all concerned and to the public" Falcucci Name Case, 355 Pa. 588, 592 (1947). With such latitude, it is not surprising that the authorities are divided. In DiBacco Petition, 32 D.&C.2d 90 (1963), a situation with rather similar facts, i.e. mother who has a new spouse and seeks to have her minor children's names correspond to her remarried name, the court sustained the father's objection noting his continued interest and association with his children as well as his voluntary support, finding thus no compelling reason to grant the change. Pollock Petition, 31 D.&C2d 514 (1963) was also factually similar although the case seemed to turn on the fact that the child was only five years old and that such action should not be taken until the minor has reached the age where he is capable of determining what name he desires. There are several other decisions which seem to turn on the point that the child is too immature to make such a decision. See, for example, In Re Bennetch, 13 D.&C.2d 308 (1957), where the children were six and nine, and Devane Petition 3 D.&C.3d 515 (1977) where the child was eight years of age. Unfortunately, we cannot find any decision which indicates what would be a proper age.

There is an interesting case out of Montgomery County, Rothstein Petition, 28 D.&C.2d 665 (1962) where the facts read like a soap opera in that each of the divorced parents had remarried spouses with other families so that there were five sets of children with such a confusing array of names that the child probably answered to any designation. A little of the flavor of this rather fascinating opinion can be found in the following excerpt:

"Two years ago, Robin was an only child. Now she has a confusing multiplicity of sibling relationships; namely, Robin and her Katzenberg half-sister; Robin and the Katzenberg children who are the children of her step-father by a former marriage; Robin and her Rothstein half-brother, and Robin and the Goldberg children, who are the children of her step-mother by a former marriage."

Interest in the case is furthered by the fact that one can not conclude until the end how the matter was going to be decided. For example, the court noted: "The universal custom and the public policy of succession to parental surnames, and that the court should not, except for sound and compelling reasons, cut a bond between a father and a daughter, or lend aid to estrangement with such a tender relationship." Nevertheless, little Robin had her way, or rather her mother's way, and was henceforth to be called Robin Katzenberg rather than Robin Rothstein.

The case cited by petitioner, although appellate decisions are hardly in point, is In Re Dillon, 423 A.2d 426, 283 Pa.Super. 26, 423 A.2d 426 (1980), where a name change for a 12 year-old boy was approved where there was no opposition from the putative father, from whom the mother was divorced, and the change requested was to that of the apparent real daddy. And in Petition of Christjohn, 286 Pa.Super. 112, 428 A.2d 597, (1981), the court found that the opposing parent's misconduct was so deplorable and subjected the child to such emotional stress that it resulted in the cessation of all contact between father and daughter. A reading of the facts discloses that the deplorable conduct consisted of the father shooting and killing the child's step-father, certainly a disruptive action on his part and one in which the murderer has questionable stand-

ing to raise the issue from his current residence at Rockview Penitentiary.

The bottom line is that in this case we are not persuaded that there are sufficient compelling reasons to make the change.

Accordingly, we enter the following

### ORDER

And now, this January 30, 1984, the prayer of petitioner to change the names of her two minor children is denied.