Falcucci Name Case.

Argued November 25, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused January 28, 1947.

*Thomas E. Frame, Jr.,* in propria persona, with him *Norman Lindenheim,* for appellant.

*Harry J. Dragonetti,* for appellees.

OPINION BY CHIEF JUSTICE MAXEY, January 6, 1947:
This is an appeal from the decrees of the court below granting permission to two persons to change their names. Joseph Nicholas Falcucci filed a petition to have his name changed to Joseph Nicholas Frame. On

the same day a minor brother, Benjamin R. Falcucci, by his next friend and father, Nicholas Falcucci, filed a petition to have his name changed to Thomas R. Frame. The facts and issues respecting both petitions are the same. Thomas E. Frame, Jr., a member of the Philadelphia Bar, appeared in propria persona to object to the prayers of both petitions. The objector denied that the petitioners had (as alleged by them) "experienced difficulty or inconvenience or suffered any embarrassment at school and elsewhere as the result of the difficulties in the spelling and pronunciation of their respective names" and he averred further that each petitioner "is intentionally and deliberately, over the repeated objections of respondent, attempting in this proceeding to usurp the name of respondent in order to benefit from the resulting confusion in identity, to the detriment of respondent".

Under the provisions of the Act of 1923, P. L. 75, 54 P.S. 1, et seq., the name of any person may be changed upon compliance with the requirements of the Act and "if the court be satisfied after . . . hearing that there is no lawful objection to the granting of the prayer of the petition". The court below found that on the record the petition should be granted. The petitioners had two brothers and a sister-in-law in the District of Columbia who had there petitioned for change of their names to Frame and the court stated that these petitions had been granted. The court in finding that there was no proof of any unlawful purpose on the part of petitioners in asking for a change of name, said that it did not appear that respondent's name was "so unusual, as he contends, that it can be said to have special significance as a means of identifying him. It appears many times in the telephone directory. Nor can we regard the fact that petitioners reside only six blocks from respondent (if such is the case) as proof that great confusion will result from the similarity of names. . . . There was no proof that petitioners were in the same business as

respondent or that they associated socially with the same persons."

At common law no individual has such a property right to his name as to entitle him to prevent another from adopting it, unless his doing so had such a fraudulent purpose as would justify equitable restraint. Lord Chelmsford said in *Du Boulay v. Du Boulay,* 16 English Reports 638 (1869) : "The right to the exclusive use of a name in connection with a trade or business is familiar to our Law; and any person using that name, after a relative right of this description has been acquired by another, is considered to have been guilty of a fraud, or, at least, of an invasion of another's right, renders himself liable to an action, or he may be restrained from the use of the name by injunction. But the mere assumption of a name, which is the patronymic of a family, by a Stranger who had never before been called by that name, whatever cause of annoyance it may be to the family, is a grievance for which our Law affords no redress."

In this Commonwealth an individual cannot change his name without permission of the appropriate court acting upon a petition complying with the statutory requirements. In granting or refusing the petition after due hearing and notice the court has wide discretion. If there is "lawful objection" to the granting of the petition it will be denied. If there is no such lawful objection the petition *may* be granted. Under certain circumstances a court even in the absence of lawful objection should deny such a petition. For example, if some medical practitioner petitioned for leave to change his name to that of an eminent and successful medical practitioner in the former's vicinity the court would properly deny the petition on the ground that a fraud on the public was intended. The same would be true if some member of the legal profession or some actor or a practitioner of some other profession would seek judicial authority to assume the name of an other person

who had gained renown in the petitioner's profession. When a petitioner for a change of name is a competitor of a highly successful person whose name he wishes to assume there is reasonable ground for suspicion that his motive in seeking a change of name is an unworthy one, and a due regard for both the public interest and for the person whose name is coveted would constrain a court to deny his petition. A court would also properly refuse a request for a change in name if petitioner asked for the privilege of assuming a name that was bizarre or unduly lengthy or which would be difficult to pronounce or would have a ridiculous or offensive connotation. Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public.

The mere fact that a man is proud of his patronymic because of its association in the public mind with honor or achievement is no reason why a court should heed his objection to some other respectable person's legally adopting the same surname unless it is clear that such other person has a dishonest purpose in seeking to do so or desires to injure or embarrass the person whose surname he wishes to assume. The same surname is sometimes borne by individuals who are illustrious and honored and also by individuals who are obscure or disreputable. However, this is one of the incidents of living in a world in which there are not a sufficient number of distinctive patronymics to allow each individual to monopolize one.

The family names of most of the men who have been presidents of the United States have been shared by thousands of Americans in the lesser walks of life. If any mother and father whose surname is the same as that of a contemporaneous President wish to give their infant son the exact full name of that President, no one will question their right to do so. On the other hand,

if some individual *motivated solely by vanity* petitions a court to change his full name to that of the then President of the United States or to that of any other famous citizen that court would be exercising its discretion wisely if it refused the petition, because names should not be changed for trivial or capricious or vainglorious reasons. Because a petitioner seeks permission to adopt a surname borne by respected members of his own community (as in the instant case) is no reason for denying his petition, unless he is thereby endeavoring to deceive the public or to cause harm or substantial annoyance to the individual whose patronymic he is seeking to share. The fact that the name a petitioner wishes to adopt is not an uncommon name is a fact which the court can properly consider in passing upon the petition's merits.[1]

It is a common occurrence for citizens of this country with alien-sounding names to desire to Americanize those names. Such a change of name is entirely reasonable and invites no criticism. It is understandable why the petitioners wished to change their surname from Falcucci to an American name in rather frequent use. Their brothers in Washington had legally changed their names to Frame. Apparently the selection of this name had no relationship whatever to the objecting respondent. There is nothing to indicate that they knew him or of him. None of these Philadelphia Falcucci brothers are lawyers and none of them compete in any way with the objector. The latter has no legal ground to object to the assumption of his surname by these petitioners. They are not likely to dishonor the name. No attack is made on their characters or reputations. They give good reasons for wishing to change their name and no harm to anyone from the change of name can now

---

[1] In the Philadelphia current telephone directory the surname Frame appears 22 times; in the Philadelphia Suburban telephone directory it appears 18 times. It also appears a number of times in the telephone books of other cities.

be foreseen. The court in granting the petitions exercised its discretion wisely.

The respondent contends that the minor, Benjamin R. Falcucci, could not lawfully change his name. Section 4 of the Act of 1923, supra, does not, as alleged, preclude a minor petitioning by his next friend for a change of name. It provides that "Whenever in pursuance of this act, a decree is made changing the name of anyone who is at the time thereof the parent of a minor child. . . ., the name of such parent shall thereafter be borne likewise by such minor child." Of course, a court would be reluctant to grant a very youthful minor's petition for a change of name, but this minor is over 18 years of age, is about to enter college, and he has two adult brothers who by due legal process changed their names to Frame and a third who is about to do so now. The fact that this minor's father retained his original name of Nicholas Falcucci does not bar the minor from changing his name. The father represented the minor as "next friend" in the petition.

The decrees are affirmed at appellant's cost.