## Rothstein Petition

*Maxwell Strawbridge,* for petitioner.

*Fox & Fox,* contra.

GROSHENS, J., June 1, 1962. — This is a petition under the provisions of the Act of April 18, 1923, P.L. 75, 54 PS §1 et seq., seeking to change the surname of seven year old Robin Ann Rothstein to conform with the surname of her natural mother, Naomi Sheila Katzenberg.

The natural father appeared and objected to any change of name. A hearing was held on May 25, 1962. Numerous allegations in the petition and answer were offered in evidence. The only witnesses heard were the natural parents and the step-parents.

Robin is the only child of the marriage of her mother, Naomi, and Burton Rothstein, who were divorced in July of 1960. Prior to the divorce, Naomi and Burton entered into an agreement which provided, inter alia, that Burton would make certain payments for the support and maintenance of Robin, and that Naomi should have "custody, charge and care of" Robin "at all times during her minority", and that Burton should have visitation rights "at reasonable times for reasonable periods" with Robin.

In October of 1960, Naomi married her present husband, M. Jay Katzenberg, by whom she now has her second daughter, an infant of eight months. Robin, her mother, her step-father and her half-sister live together in a home owned jointly by Naomi and Jay in Montgomery County. Jay has children by a former marriage who live elsewhere.

In the meanwhile, Robin's father, Burton Rothstein, has remarried. He resides in Philadelphia in a household made up of himself, his present wife, her two children by a former marriage, and an infant child born of his present marriage. His two step-children bear the surname of their natural father, Goldberg.

The adults in the Katzenberg and Rothstein households have five sets of children. Little Robin is the only Rothstein in her own home. When she visits the home of her natural father, Burton, she mingles with Rothstein and Goldberg children.

Robin and her step-mother share the surname Rothstein, yet Robin's natural mother, with whom she lives and whom she dearly loves, is a Katzenberg, as is her half-sister. Her half-brother is a Rothstein who lives with half-brothers who are Goldbergs.

Robin, a member of the Katzenberg household, is registered in public school as Robin Ann Rothstein. She is known to some of her schoolmates and playmates as Robin Rothstein, to others as Robin Katzenberg, and to still others as both Robin Rothstein and Robin Katzenberg. In her natural mother's home she is a Katzenberg and in her natural father's home she is a Rothstein.

The question to be here decided is whether the court may lawfully step into this maze of tangled household and sibling relationships and surnames to clearly label a little girl as her mother's daughter and to clearly identify her as a member of her immediate family circle. The answer is not free from difficulty.

Section 3 of the Act of 1923 sets forth the conditions under which we may approve the proposed change of name:

"If the court be satisfied after said hearing that there is no *lawful objection* to the granting of the prayer of said petition, a decree *may* be entered by said court changing the name as prayed for . . ." (Italics supplied.)

A "lawful objection" is an objection which defeats the petition as a matter of law, such as the failure to advertise as required by the act, or the insanity of the petitioner, or improper venue and the like. We are satisfied there is no "lawful objection" to the granting of the prayer of this petition. Therefore, the action we take must be based upon the court's discretion.

In Falcucci Name Case, 355 Pa. 588 (1947), Chief Justice Maxey said at page 592:

"Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public."

And at page 594, the Chief Justice cautions:

"Of course, a court would be reluctant to grant a very youthful minor's petition for a change of name . . ."

We have considered the decisions cited by counsel for Burton Rothstein, father of Robin, in Rounick's Petition, 47 D. & C. 71 (1942), In re Bilske, 75 D. & C. 288 (1951), and In re Bennetch, 13 D. & C. 2d 308 (1957), and find, except for the Bilske case, they are clearly distinguishable on the facts.

In Rounick's Petition, the court found a fierce and virulent animosity between the natural parents. The mother had not remarried, but had resumed her maiden name and it was apparent that the petition to change the little boy's surname from his father's to her maiden

surname was but a stratagem in a cruel campaign to estrange a father and son. In the case at bar we find no such improper motive upon the part of the mother.

The Bilske case is a short unenlightening per curiam opinion which briefly bows to Chief Justice Maxey's cautionary remark, cites Rounick's Petition and summarily dismisses the petition.

In the Bennetch case, the petition prayed to change the surname of the mother and her two little daughters from Bennetch to Bennet against the wishes of the natural father, Richard Andrew Bennetch. The facts submitted to support that petition are not set forth in the opinion, but obviously they must differ substantially from the facts of the case at bar.

In all cases affecting children, they are the ones to be kept in mind by the court in disposing of such cases. Their welfare transcends all other considerations. Therefore, the person to consider in the case at hand is the little girl Robin.

This child is without capacity to understand the full nature of this legal proceeding, as she is without capacity to understand the frailties of human nature which have cruelly conspired to cast her in the unhappy role of the bewildered child of a broken marriage made more complex by the inter-marriage of her parents with the fragments of other broken marriages. Two years ago, Robin was an only child. Now she has a confusing multiplicity of sibling relationships, namely: Robin and her Katzenberg half-sister; Robin and the Katzenberg children who are the children of her step-father by a former marriage; Robin and her Rothstein half-brother, and Robin and the Goldberg children, who are the children of her step-mother by a former marriage.

In this sudden welter of intermingling old and new combinations, Robin is closer to her mother Naomi than to anyone else. Nature and the fusion of an inti-

mate dependent relationship identify Robin with Naomi, and in our opinion the law should strengthen that identification with a common surname.

Furthermore, Robin is in fact and in spirit an integral sector of a small family circle of a new household in a new community. School and playground relationships and the public opinion of her little world identify Robin with the Katzenberg household, and in our opinion the law should cement that identification with a common surname.

Little children (especially girls) should be as free as possible from the prying curiosity and taunts of their peers. If Robin and her mother, and Robin and her household are to bear alien names, so strikingly different in spelling and sound, it is bound to arouse childish curiosity, comment and, perhaps, derision which can only offend and hurt Robin.

If these factors impair or adversely affect Robin's personality, as they are bound to do, the damage is being done now and in the years immediately ahead. It is no answer to her present problems to say that her relief must wait until she fully appreciates the circumstances and is capable of selecting a name for herself.

In exercising our discretion we have kept in mind the universal custom and the public policy of succession to paternal surname, and that the courts should not, except for sound and compelling reasons, cut a bond between a father and daughter, or lend aid to estrangement in such a tender relationship.

We are aware that Burton Rothstein is genuinely fond of his daughter Robin, and that his opposition to the prayer of the petition is based upon his conception of what is best for the welfare of Robin. We regret that our judgment of what is best for her welfare does not coincide with his.

When dealing with the happiness and welfare of a little child, its elders, as well as the court, should

objectively consider only the child. And so, exercising our discretion consonant with this important public policy, we enter the following

*Final Decree*

And now, June 1, 1962, it is ordered, adjudged and decreed, that the name of Robin Ann Rothstein be and it is hereby changed to Robin Ann Katzenberg in accordance with the Act of Assembly in such case made and provided.