428 A.2d 597

**In the Matter of the Petition of Michele Lyn CHRISTJOHN, a minor by Cynthia R. Barnes, her Mother and Natural Guardian for Change of Name of Michele Lyn Barnes.**

**Appeal of Charles A. CHRISTJOHN.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed April 10, 1981.

Charles A. Bierbach, Huntingdon, for appellant.

Joseph Graff, Bradford, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

Appellant appeals from a decree granting a petition for change of name of a minor. Appellant contends that the judge abused his discretionary power in permitting the name change. We disagree and, therefore, affirm the decree.

Appellant, Charles A. Christjohn, and appellee, Cynthia R. Barnes, the natural parents of Michele Lyn Barnes, were divorced in March of 1975. In July of 1975, appellee, who retained custody of Michele, married Robert Barnes. On April 24, 1976, appellant shot and killed Mr. Barnes. Appel-

lant was found guilty of murder of the second degree [1] and is currently incarcerated at Rockview Penitentiary in Bellefonte, Pennsylvania.

On July 15, 1977, Mrs. Barnes filed a petition on behalf of Michele to have Michele's surname changed from Christjohn to Barnes.[2] Upon receipt of notice of the petition Charles Christjohn filed a petition opposing the name change. A hearing was held, and on January 15, 1979, the change of name was granted.

In reaching his determination the chancellor relied upon the following facts elicited at the hearing. Michele learned of the circumstances causing her stepfather's death through the extensive publicity accorded the incident. Dr. John Pitkan, a child psychiatrist, attributed the emotional instability Michele experienced after the incident to the trauma she had suffered. He stated that when he last consulted with Michele, on or about November 1, 1978, she gave her name as Michele Barnes. Michele's emotional state subsequent to the shooting made it necessary for her to repeat the first grade. Her teacher, Jean Hullihen, testified that on several occasions Michele tried to use her stepfather's surname. Both Dr. Pitkan and Mrs. Hullihen stated that they thought it would be in Michele's best interest to change her name to Barnes.[3]

Appellant concedes that there were no lawful objections to the granting of the petition for change of name. In the absence of lawful objection, the granting of such a petition is a matter left to the discretion of the court. 54

1. 18 Pa.C.S. § 2502. Appellant pled guilty to a general charge of murder.

2. Michele was nine years old and in the third grade at the time this petition was argued.

3. Dr. Pitkan thought the name change would strengthen Michele's identification with her mother and her sense of personal security. He considered this especially important to Michele's well being since her only stable relationship has been with her mother. Mrs. Hullihen indicated that the name change would improve Michele's sense of association with her mother and would lessen the teasing she might receive because of her father.

P.S. § 3.[4] It is axiomatic that "'[w]henever a court has discretion in any matter . . . it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public.'" *Petition of Alexander*, 260 Pa.Super. 371, 374, 394 A.2d 597, 599 (1978), *quoting Petition of Falcucci*, 355 Pa. 588, 50 A.2d 200 (1947). The only question to be determined, therefore, is whether the court abused its discretion in granting the petition.

"In granting or refusing [a name change] petition after due hearing and notice the court has wide discretion." *Petition of Falcucci*, 355 Pa. at 591, 50 A.2d at 202. We must not disregard a chancellor's determination unless "it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied." *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 72, 384 A.2d 1228, 1232 (1978), *quoting Roberts v. School District of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975). Our scope of review is thus necessarily restricted to the question whether the evidence is sufficient to support the decision reached by the court. *Stotensburg v. Frost*, 465 Pa. 187, 348 A.2d 418 (1975); *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 344 A.2d 837 (1975). If we find the evidence sufficient we must affirm, even if based upon the same evidence we would have reached a different conclusion. *Masciantonio's Estate*, 396 Pa. 16, 151 A.2d 99 (1959); *McRoberts v. Phelps*, 391 Pa. 591, 138 A.2d 439 (1958).

In *Falcucci*, our supreme court recognized that "a court would be reluctant to grant a very youthful minor's petition for a change of name." 355 Pa. at 594, 50 A.2d at 203. This view accords with those courts which have based such hesitancy upon an interest in preserving the custom of having the child bear the paternal surname, and an interest

---

4. Pennsylvania provides by statute that "[i]f the court be satisfied after said hearing that there is no lawful objection to the granting of the prayer of said petition, a decree *may* be entered by said court changing the name as prayed for." 54 P.S. § 3. (emphasis added).

in maintaining the relationship between the opposing parent and the child.[5] *Laks v. Laks*, 25 Ariz.App. 58, 540 P.2d 1277 (1975); *Mark v. Kahn*, 333 Mass. 517, 131 N.E.2d 758 (1956); *Application of Lone*, 134 N.J.Super. 213, 338 A.2d 883 (1975); *In Re Russek*, 38 Ohio App.2d 45, 312 N.E.2d 536 (1974); *Flowers v. Cain*, 218 Va. 234, 237 S.E.2d 111 (1977). However, our reluctance does not constitute a prohibition against granting a minor's petition for change of name. Thus, if after weighing these considerations it is apparent that the opposing parent's misconduct is so deplorable that it is in the minor's best interest to permit a name change, the petition should be granted. *See generally Nellis v. Pressman*, 282 A.2d 539 (D.C.App.1971); *Degerberg v. McCormick*, 41 Del.Ch. 46, 187 A.2d 436 (1963); *West v. Wright*, 263 Md. 297, 283 A.2d 401 (1971); *Mark v. Kahn*, 333 Mass. 517, 131 N.E.2d 758 (1956); *Robinson v. Hansel*, 302 Minn. 34, 223 N.W.2d 138 (1974); *Application of Lone*, 134 N.J.Super. 213, 338 A.2d 883 (1975); *In Re Fink*, 75 Pa.D. & C.2d 234 (C.P. Lycoming 1976); *Rothstein's Petition*, 28 Pa.D. & C.2d 665 (C.P.Montg.1962); *Rounick's Petition*, 47 Pa.D. & C. 71 (C.P. Phila.1942).

In the facts now before us, we find no abuse of discretion. The chancellor's determination that the best interests of the child would be served by allowing the name change was within his broad powers. The notoriety and truculence of appellant's shooting of Mr. Barnes subjected Michele to severe emotional stress and resulted in the cessa-

5. *Compare In Re Dillen*, 283 Pa.Super. 26, 423 A.2d 426 (1980), wherein we reversed a court order denying a minor's petition for change of name. In *Dillen*, the appellant's mother had petitioned on his behalf to have his name changed to that of her current husband, who allegedly was the boy's natural father. The twelve year old child testified that he understood the nature of the proceeding and that he wanted to have his name changed. Appellant, his mother, and his stepfather all filed affidavits of consent. Notice was given, however attempts to personally serve the putative father were unsuccessful. Holding that the court could not, in the absence of supportive evidence, find that a relationship existed between the presumed father and his son, we allowed the petition. The instant case is clearly distinguishable in that we are presented with an opposing parent.

tion of all contact between father and daughter. Michele's testimony demonstrated that she was cognizant of the ramifications of her petition and that she was capable of making a rational determination to discard her father's name. The testimony of her psychiatrist and her teacher corroborated her mother's testimony that it was best for Michele to have her name changed. Appellant offered no evidence to show the existence of, or his desire for, a relationship between himself and Michele. Therefore, the court could reasonably have found that, in light of appellant's misconduct, Michele's interests were best served by granting the change of name.

Accordingly, we affirm the chancellor's decree.