## In Re: Petition of J.M. & R.M.

*Joseph M. Blazosek,* for petitioner.
*John J. Thomas,* for respondent.

BROMINSKI, J., July 16, 1984—

## DECISION

This matter comes before the court upon the petition of H. L., natural mother and guardian of R. M., age two, and J. M., age four, to change their names to R. L. and J. L.

The petition states that the minor children have always been residents of Luzerne County, Pa. and have continually resided with the mother and currently reside with her at 659A Alberdeen Road, Wright Township, Mountaintop, Pa. That petitioner married C. L. on November 25, 1983, and resides with him as of the date of the petition, as his lawful wife.

The petition further states that the minor childrens' natural father was guilty of various crimes, and as of February 24, 1982, began serving a minimum sentence of seven and one-half years to a maximum sentence of 15 years, at the State Correctional Institution at Chase, Pennsylvania. That by virtue of his incarceration, and prior thereto, he has not maintained a close contact with petitioners herein.

The petition further alleges that petitioner and her husband and the two children are now part of a family unit and for all intents and purposes, present an appearance as if they are the natural children of said H. L. and C. L. and view their living arrangements as if their family relationship coincided with the name L. to other children in their neighborhood and circle of contact.

They seek the above changes of name for the reason that it is more beneficial for their future attendance at school and contact with other children to bear the name of their mother, H. L., and to avoid any confusion or uncertainty as to their family makeup and status as viewed by others.

The natural father, R. L. M., objects to the change of names, and in his answer to the petition alleges that he has a sincere interest in allowing the last names of the children to continue. That he has maintained regular and frequent contact with the children, as much as his situation will allow, being an inmate of the State Correctional Institution at Dallas, Pa. and that he has done nothing to incidate to any party that he has abandoned his interest in these minor children and requests the court to dismiss the petition for change of name.

The testimony elicited at the hearing on the petition is as follows:

The first witness to testify was petitioner herein, H. L., and she testified that she has been married to C. L. for six months; that she and her second husband still reside at 659A, Alberdeen Road, Mountaintop, Pa., the same residence she occupied with her first husband; that when J. was born, her husband spent a good deal of time with her; that he was not available when her second child was born; that he worked the 3:00 p.m. to 11:00 p.m. shift at the Nanticoke Hospital, went out afterwards and came home drunk at 5:00 a.m.; that his drinking progressed and he spent less and less time at home or with the children; that he went hunting on J.'s first birthday and did not attend her party; that after the second child was born he spent even less time at home, sometimes working, sometimes at union meetings and sometimes just out, from 7:00 p.m. or 8:00 p.m., until 2:00 a.m., 3:00 a.m., 5:00 a.m., or 8:00 a.m.; that they went to the Mental Health Association for help; that R. L. M. wouldn't talk to a priest but that he went to Alcoholics Anonymous, but didn't continue; that he went to Mental Health four, five, maybe six times; that they lived together until November 13, 1981, when R. L. M. left; that

he returned at Thanksgiving; that during this two week period he visited the children on one occasion. That they then lived together until Christmas; that he didn't come home until 10:00 a.m. Christmas day, he was drunk and went to bed and didn't get up until 3:00 p.m.; that he had vomited in bed. On January 5, 1982, the witness filed for divorce and on January 21, 1982, they separated; that it was agreed between the parties that R. L. M. would pay $150 every two weeks; that the witness would have custody of the children and remain in the house. That he did give the witness $75 on two occasions but then stated he was a little short; that the divorce was final May 20, 1982. That on February 24, 1982 R. L. M. got into trouble with the law, was brought to trial on charges of attempted robbery and attempted murder; that he was found guilty of these charges and is now incarcerated at Chase Correctional Institute for a period of seven and one-half to 15 years. That between January and February of 1982, he visited the children two or three times; that he wanted to see them every week; that J. kept asking when he was coming back; that she took the baby to see him at Luzerne County Prison but that they both agreed that the visit to prison would be too upsetting to J.; that she had explained the circumstances to J. but J. didn't believe her. J. thought her father was at a meeting and would be coming home and the child began having bad dreams; that J. attends St. Paul's Nursery School and was enrolled as J. M.; that J. later began identifying herself as J. L.; that R. L. M. sends his children birthday cards and Christmas and Easter cards and the witness sees that the children receive them.

On cross-examination by Mr. Thomas the witness again stated that she did see that the children received the cards and letters sent by R. L. M.; that R.

was only 20 days old when they separated; that J. remembers her father but R. does not; that J. does not write to her father and that she has had bad memories and several nightmares; that J.'s good memories of her father were from the time she was born until she was one year old; that R. L. M. never abused the children; that during their marriage he worked steadily at the Nanticoke Hospital and also part-time as a security guard; that she feels it would be beneficial if the children did not have to explain that their names were different than their mother's name.

Regina Sekol, called on behalf of petitioner, testified that she is a teacher presently employed at the Mountaintop Play School in St. Paul's Lutheran Church; that she has three and four year olds in her class and J. M. started the term in September, 1983; that she was registered as J. M.; that they conduct a play and learning situation with games, songs, stories, alphabet, letters, numbers, etc.; that the class consists of 15 children; that J. refers to herself as J. L.; that her parents drop her off and pick her up.

On cross-examination she testified that J. is a little above average, very bubbly and bright; that she is not aware of any problem developing because of the fact that although the child is registered as "J. M.", she calls herself "J. L.".

Reverend Topolewski, called on behalf of petitioner, testified that he is an ordained minister and is pastor of Christ United Methodist Church in Mountaintop; that he performed the marriage ceremony of C. and H. L.; that they split their time between his church and St. Jude's, since H. L. is a member of St. Jude's. That they bring the children to services and appear to be a very close famly, but he is not aware of how J. refers to herself or whether the

change of name would be of assistance to her in her day to day activities.

R. L. M., respondent, testified that he has been incarcerated for two and one-half years; that he was married April 20, 1974; that he is the natural father of J. and R. M. and that he is strongly against this change of name proceeding; that he resided with J. for approximately two years; that they had a close father-daughter relationship during this time; that he never abused her; that he left because his wife insisted he go; that he visited the children weekly but he was not allowed to be with them alone; that R. was only two months old when he left the household, but he did have occasion to feed him, bathe him and diaper him; that he saw him once when H. brought him to the prison for a visit; that J. was not allowed to visit him because it upset her; that he has sent cards and letters to the children on all holidays and birthdays; that he has asked H. to bring the children to visit him but she refused because she said that it woul be harmful to the children; that his friends pay for the cards and gifts he sends the children on birthdays and holidays and he will reimburse them when he gets out; that he has not abandoned his children and is looking forward to seeing them when he gets out of prison; that he has attended one AA meeting.

On cross-examination he testified that during the period January 22 through February 22, 1982, he made two $175 payments for child support and that while he was working at Nanticoke Hospital his pay went into a joint account to pay household bills; that his use of drugs and alcohol only occurred after his separation; that it was at his wife's insistence that he went to AA and for mental health treatments; that he earns $55 a month on his work detail in prison but he needs this money for his personal use.

On re-direct examination he testified that his wife was aware of his indecent exposure arrest in 1974, but this was before the children were born.

## DISCUSSION

In granting or refusing a name change petition, after due hearing and notice, the court has wide discretion. Petition of Christjohn, 286 Pa. Super. 112, 428 A.2d 597, 598 (1945), and all of the cases agree that the minors' best interest is paramount. This has to be weighed against the natural father's protest to the name change.

As ably stated in the case of The Petition of Rocuskie et al., 41 Northumberland Legal Journal 80, 82 and 83:

" 'In this commonwealth an individual cannot change his name without permission of the appropriate court acting upon a petition complying with the statutory requirements. In granting or refusing the petition after due hearing and notice the court has wide dscretion. If there is "lawful objection" to the granting of the petition it will be denied. If there is no such lawful objection the petition may be granted. Under certain circumstances a court even in the absence of lawful objection should deny such a petition . . . Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public.' Petition of Falcucci, 355 Pa. 588, 50 A.2d 200 (1947).

A 'lawful objection' is an objection which defeats the petition as a matter of law, such as the failure to advertise as required by the Act, or the insanity of the petitioner, or improper venue and the like. We are satisfied there is no 'lawful objection' to the granting of the prayer of this petition. Therefore, the

action we take must be based upon the Court's discretion."

In that case, the court found that the natural father, who protested the change of name, had for all intents and purposes, abandoned the child, and allowed petitioner's request.

Now, do the facts here warrant granting the petition over the natural father's protest?

The facts indicate that while respondent did not abandon his children, his conduct before incarceration was incompatible with the concept of a marriage unit. He was constantly inebriated, was remiss in the order of support, but, more importantly, J. M.'s memories of her natural father resulted in bad dreams. In the affirmative sense, although she suffers no obvious problems from it, J. identifies herself in school with the name J. L. Although J. is only four years of age, she would have to wait many years to maintain a normal relationship with her natural father, if at all.

While respondent, R. L. M., is presently maintaining contact with the two minor children with cards and presents, his deeds now contradict his attitude before incarceration.

To make J. M. wait the necessary years to maintain a normal relationship with her natural father, rather than have her bear the name of L. during this time, would not be in her best interest, in the court's discretion. And, although R. M. is too young to be affected by this proceeding, it would seem contrary to his best interest if we changed his sister's name and not his. This would present problems in the near future that would require attention.

For the foregoing reasons, the prayer of the petition is granted.

Accordingly, we enter the following

## ORDER

It is hereby ordered, adjudged and decreed that the names of J. M. and R. M. be changed to J. L. and R. L.