## In Re: Petition of Stoves

*J. David Caruthers*, for petitioner.
*Adam N. Aretz*, for respondent.

LOUGHRAN, *J.*, January 4, 1985 — Petitioner herein is Donald Keith Stoves, Jr., a 12 year old minor. This young man resides with his mother, Michelle Jones Stoves Gongaware, and his maternal grandparents, Mr. and Mrs. John P. Jones, Sr. in North Huntingdon Township, Pa. Young Stoves wants his surname changed to Jones — his mother's maiden name.

Petitioner's natural father appeared at the hearing with counsel to voice his objections to the proposed name change.

## FINDINGS OF FACT

1. That petitioner is Donald Keith Stoves, Jr., by Michelle Jones Stoves Gongaware, who resides at 2072 Leo Street, North Huntingdon Township, Pa., 15642.

2. That respondent is Donald Keith Stoves, Sr., who resides on Madison Avenue, North Irwin, Pa., 15642. He is the natural father of petitioner.

3. That petitioner currently resides with his natural mother and maternal grandparents.

4. That petitioner is a minor, having been born on April 1, 1972.

5. Acting through his natural mother, petitioner filed a petition to change his name from Donald Keith Stoves, Jr. to Donald Keith Jones.

6. Petitioner's mother resumed her maiden name, Michelle Jones, after she and respondent, Donald Keith Stoves, Sr., were divorced, and after petitioner's mother and her second husband, Gongaware, were divorced.

7. Respondent has objected to the proposed change of name.

8. Petitioner is known by family, friends, school authorities, church members, and the general community as Donald Keith Stoves, Jr., although recently petitioner has asked everyone to call him by the surname Jones.

9. Petitioner will not be making any change in residence, school or church in the immediate future.

10. The household in which petitioner lives includes a half sister with the surname Gongaware.

11. Respondent pays child support for the care and maintenance of petitioner and has at all times remained current in such support payments.

12. After respondent's separation from petitioner's mother, respondent, Donald Keith Stoves, Sr., made numerous attempts to contact and arrange visitation with petitioner, but was initially prevented by the natural mother from seeing or speaking with petitioner.

13. After respondent and petitioner's mother were divorced, petitioner's mother subsequently remarried.

14. After her remarriage petitioner's mother directed respondent to leave her and petitioner alone so that respondent would not break up her new marriage.

15. Respondent sincerely desires to establish a father-son relationship with petitioner, though they have not seen each other for ten years.

## DISCUSSION

The statute governing judicial change of an individual's name is the Act of December 16, 1982, P.L. 1309, §2 (54 Pa.C.S. §§701-705). Under section

702 of this Act "The Court of Common Pleas of any county *may* by order change the name of any person resident in the county." (Emphasis added).

The Superior Court in Petition of Christjohn, 286 Pa. Super. 112, 114-115 (1981) discussed the standard to be applied by the courts in deciding whether or not to grant a petition for change of name.*

" . . . In the absence of lawful objection, the granting of such a petition is a matter left to the discretion of the court. 54 P.S. §3. It is axiomatic that ' "Whenever a court has discretion in any matter . . . it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public." ' Petition of Alexander, 260 Pa. Super. 371, 374 394 A.2d 597, 599 (1978), quoting Petition of Falcucci, 355 Pa. 588, 50 A.2d 200 (1947).

• • •

" 'In granting or refusing (a name change) petition after due hearing and notice the court has wide discretion.' Petition of Falcucci, 355 Pa. at 591, 50 A.2d at 202 . . . "

In exercising such discretion, the court must consider what is in the best interest for the welfare of the child.

"The person to consider is the child. In all cases affecting children, they are the ones to be kept in

---

*The court's decision was made under the Act of April 18, 1923, P.L. 75, §1 et seq., 54 P.S. §1 et seq., as amended, the predecessor to the present statute. The prior act gave the court discretionary authority to order a name change (using language similar to the present statute) once the court was " . . . satisfied after said hearing that there was no lawful objection to the granting of the prayer of said petition . . . "

mind by the court disposing of such cases . . . " Rounick's Petition, 47 D. & C. 71, 75 (1942)

In cases of this sort, the key factual issues usually involve the actions of the objecting parent (normally the father) as they relate to the child — is the father paying support for the child, has the father maintained contacts with the child by visitation, is the father guilty of some notorious misconduct which brings shame upon the name shared by the child. President Judge Greevy of the Court of Common Pleas of Lycoming County explained the relevance of such factual matters in In re Fink, 75 D. & C. 2d 234, 238 (1976), saying:

" . . . The purpose of our examination of the conduct of the father is to determine whether granting the petition for change of name might tend to destroy a parental relationship where that relationship might be beneficial to the child . . . "

The fact that a father voluntarily continues to make support payments is a factor which militates against changing a child's name from that of the father. In DiBacco Petition, 32 D. & C. 2d 90, 91 (1963), in an opinion supporting its order dismissing the petition for change of name, the court stated:

"The father appears to be a substantial citizen, has been at his present place of employment for over 15 years, and through his continued voluntary support of his boys indicates great interest in them."

In the present case, the testimony establishes that the father, Donald Keith Stoves, Sr., has lived up to his responsibility of supporting his son. He has remained current at all times in his support payments. Mr. Stoves' conscientious payment of support for his son is some evidence that he is not total-

ly "indifferent" toward his son, as counsel for petitioner suggests.

Mr. Stoves lack of contact with his son for ten years, while practically backyard neighbors, is somewhat puzzling to this court. This court can initially understand that Mr. Stoves honored his wife's request to stay away from her new marriage and/or not force himself where he was not wanted. It is perplexing why a father waits ten years to attempt to begin a relationship with his son, but it is a request that is difficult to deny or hamper.

I see nothing to help the welfare of the child by granting this petition. I am convinced, at this time, that if I would grant it, this court would be lending aid to the estrangement of father and son. To decree a name change would simply be another slip (or the final blow) of a complete severance of the father-child relationship.

In DeVane Petition, 3 D. &. C. 3d 515 (1977), the court denied the petition of an eight year old girl to change her name to her mother's maiden name, despite a " . . . lack of contact and financial support between father and child, and recent minimal efforts by father to correspond with and deliver gifts to the child . . . " where the father objected to the proposed change of name. The court quoted Judge Sloane's opinion in Rounick's Petition, supra., that the welfare of the child would not be helped by the granting of the petition, and that:

"We think it better to let this case rest until the minor knows his own mind and the father has had further opportunity to pursue his professed desire to retain a place in the child's life. If later the child again seeks the change, we will be in better position to entertain the expression of his desire." DeVane Petition, supra., at 517 quoting Rounick's Petition, supra., at 76."

46

It was obvious from the testimony of petitioner at the hearing that he desires a father figure to fill the void existing in his life presently. Mr. Stoves has testified that he wants to see his son and be a part of the boy's life. On cross-examination the boy acknowledged that he would be willing to try to get to know his father, if his father wanted it. Mr. Stoves has stated that if, after such an attempt, his son still wants to change his name from Stoves to Jones, he will not oppose the change.

All Mr. Stoves is asking the court at this time is to defer for the time being the severance of his only real link to his son at present — the chance to get to know his son and teach him about the name he has borne for 12 years. If they cannot establish a relationship that convinces petitioner that he should retain the Stoves name, an order could be enforced with the consent of all. For the present, however, Mr. Stoves requests the court to find that it is not in young Donald's best interest to sever a tie with his father until he has the chance to meet his father and learn if he is the sort of man with whom he desires to share not only blood, but the name Donald Keith Stoves. This court will respect this last chance to revive this relationship and the petition is therefore denied.

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties to this case.

2. The standard for this court's determination in this case is that of the court's sound discretion and the best interests of the minor petitioner.

3. The court finds that it is not in petitioner's best interest to grant the prayer of his petition.

## ORDER OF COURT

And now, this January 4, 1985, upon consideration of the instant petition to change name, and the testimony offered to this court,

It is hereby ordered, adjudged and decreed that it is not in the best interests of petitioner to grant the prayer of said petition.

Therefore, it is ordered that petitioner's prayer for change of name is hereby denied and said petition is dismissed.