DOWLING, J.,
For a person to have a new and highly descriptive name bestowed upon himself is a circumstance well-known to history. Alexander of Macedón, Peter I and Catherine II of Russia, and Frederick of Prussia, after all, had the sobriquet “the Great” added to their names, in recognition of their formidable conquests and achievements as empire-builders; and Shakespeare’s magnificent warrior-hero, who started life as Caius Marcius, finds himself new-christened when, after his stunning victory at Corioles, he hears his fellow general Cominius proclaim:
Therefore be it known,
As to us, to all the world, that Caius Marcius *646 Wears this war’s garland; in token of the which, My noble steed, known to the camp, I give him, With all his trim belonging; and from this time, For what he did before Corioles, call him With all th’ applause and clamor of the host, Marcius Caius Coriolanus! Bear The’ addition nobly ever![1]
However, there is one significant difference between the fairly grandiose examples cited above and the case currently before us, in that the monarchs and world-shakers to whom we referred were given their titles by popular acclamation. It has fallen to us, in the instant matter, to decide whether a name that is, to say the least, of an unusual character can or should be granted to an individual on his own motion.
Petitioner in this instance, Stanley Larue Bethea, has submitted a request to this court, asking that his name be formally changed to “World Saviour.”[2] The only pertinent question to be addressed herein is whether it would be a proper exercise of our discretion to grant this request.
We must hold that it would not be. It appears to us that the case of Petition of Falcucci, 355 Pa. 588, 50 A.2d 200 (1947), has set forth the governing principles in matters such as these with an admirable cogency. The court in that instance stated:
“In this Commonwealth an individual cannot change his name without permission of the appropriate court acting upon a petition complying with the statutory requirements. In granting or refusing *647 the petition after due hearing and notice the court has wide discretion. If there is '‘lawful objection’ to the granting of the petition it will be denied. If there is no such lawful objection the petition may be granted. Under certain circumstances a court even in the absence of lawful objection should deny such a petition. For example, if some medical practitioner petitioned for leave to change his name to that of an eminent and successful medical practitioner in the former’s vicinity the court would properly deny the petition on the ground that a fraud on the public was intended. The same would be true if some member of the legal profession or some actor or practitioner of another profession would seek judicial authority to assume the name of an other [sic] person who had gained renown in the petitioner’s profession. When a petitioner for a change of name is a competitor of a highly successful person whose name he wishes to assume there is reasonable ground for suspicion that his motive in seeking a change of name is an unworthy one, and a due regard for both the public interest and for the person whose name is coveted would constrain a court to deny his petition. A court would also properly refuse a request for a change in name if petitioner asked for the privilege of assuming a name that was bizarre or unduly lengthy or which would be difficult to pronounce or would have a ridiculous or offensive connotation. Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public.” Falcucci, supra, (emphasis supplied)
It is by these criteria that we have judged this current matter. We must state at the outset that there has, to date, been no objection, lawful or *648 otherwise, to this petition, so that one of the requirements contained in the above passage has already been resolved in the petitioner’s favor — although it is something of a field day for the poetic imagination to envision the circumstances under which such a protestation could be raised in the case at bar.
However, petitioner is on far shakier ground when the other criteria from Falcucci are examined. As to the bizzarerie attendant upon this petition, we can attest with certitude that, in all of our many years on this bench, no one has ever asked us to invoke our legal authority to certify them as a savior of man. We are also mindful of the fact that the majority of the human race either believes that their savior has already come (which, if true, would mean that the name would be misapplied in this instance), or that he is yet to come (which, if true, would almost certainly mean that his stature would, at that time, be certified by the sort of public acclaim which surrounded the figures we named at the outset of this opinion, and of which we see no evidence in the matter currently at bar). Those who accept either of these propositions would, of course, find the appellation under discussion to be highly offensive if bestowed upon anyone other than the One in whom they believe.
While we concede that the case currently before us is probably not quite what Chief Justice Maxey had in mind when he referred to “a petitioner for a change of name [who] is a competitor of a highly successful person whose name he wishes to assume,” there is, as the Scripture reminds us, “a time for every purpose under heaven”[3]; and the principle behind His Honor’s reasoning seems to us to apply here, even if in a somewhat rarefied state.
*649 Finally, while there is no evidence that petitioner has submitted this request with an eye to the commission of any fraud, we cannot escape the disquieting feeling that a granting of this petition would make the likelihood of, if not fraud, certainly repeated and egregious error much more likely. We find it difficult to imagine the ordinary duties of a citizen in our modern society — in areas as diverse as responses to income tax mailings, census questionnaires, and opinion polls — being conducted under the heading of this particular moniker. Also, the fact that there is such diversity of opinion as to the nature and identity of the one to whom so many refer by that word “savior” would, we feel, greatly increase the possibility of an improper use of this name being made by unscrupulous characters. We have only to remember the oceans of blood that have been wrongly spilled over the centuries by those who claimed to be acting on behalf of a wide variety of prophets, seers and divine messengers to take this potential for abuse seriously.
Accordingly, we enter the following
ORDER
And now, January 15, 1991, the petition for change of name by Stanley Larue Bethea to change his name to “World Savior” is denied.

. Coriolanus, Act I, Scene 9.

. Petitioner gives as his reason for wanting this change of name the proposition that it will facilitate him in becoming a vehicle for “peace in the Middle East and the rest of the world.” With the prospect of war in that region hovering over our heads as of the date of this writing (January 10), we are bound to say that this avenue towards peace would seem about as likely to bear fruit as any other.

. Ecclesiastes 2:1.