In re: Name Change of C.R.C., A Minor Child.

Appeal of: B.R.

Superior Court of Pennsylvania.

Submitted Jan. 21, 2003.

Filed March 10, 2003.

Randi W. Dincher, Williamsport, for appellant.

Julie M. Pentico, Williamsport, for appellee.

Before: JOHNSON, LALLY–GREEN and POPOVICH, JJ.

POPOVICH, J.

¶ 1 This case is an appeal from the order entered on April 17, 2002, in the Court of Common Pleas of Lycoming County, granting the petition of W.A.R. to change the surname of his minor child, C.R.C., to W.A.R.'s surname. Upon review, we reverse.

¶ 2 The relevant facts and procedural history are as follows: W.A.R. (Father) and B.R. (Mother) were married on June 3, 2000, and separated in May of 2001. At the time of the parties' separation, Mother was pregnant. On December 13, 2001, Mother gave birth to a son, C.R.C.[1] At trial, Mother claimed that prior to C.R.C.'s birth, she told Father that she was going to list C.R.C.'s surname as her maiden surname because Father was unwilling to add C.R.C. to his health insurance. Mother restated her intentions to Father during Father's hospital visit immediately following C.R.C.'s birth, but Father objected at that time by stating that the parties remained married and because Mother continued to use Father's surname, C.R.C.'s surname should be Father's surname. Following this argument, Mother listed C.R.C.'s surname as her maiden surname on the child's birth certificate. Father visited the hospital a second time during Mother and C.R.C.'s stay, whereupon, Mother indicated to Father that she would initiate further contact in order to arrange further visitation between Father and C.R.C. After being released from the hospital, Mother took physical custody of C.R.C. Father testified that he had no means initially to contact Mother regarding visitation with C.R.C. other than her work number because he did not possess Mother's unlisted phone number and address or the unlisted phone numbers or addresses of her family.

¶ 3 Father did not see C.R.C. again until approximately one month after C.R.C. left the hospital, when Mother brought C.R.C. to Father's place of employment after C.R.C.'s first check-up. Mother testified that she wanted Father to contact her at work after she returned to work following maternity leave if Father wanted to make arrangements to see C.R.C. Mother was uncomfortable in Father's presence and did not want Father to contact her or attempt to visit C.R.C. at her home. Father testified that he did not like to call Mother at work regarding C.R.C. because he did not wish to involve her co-workers in their personal business.

¶ 4 Father made various offers to Mother for assistance of expenses related to C.R.C.'s upbringing, but Mother refused Father's aid. Thereafter, on February 19, 2002, Father filed a Petition for Change of Name of C.R.C. In the petition, Father

---

1. The parties have no other children and neither parent has filed for legal custody of C.R.C. Mother resumed use of her maiden surname in September, 2002.

claimed that he and Mother shared the same surname, no divorce action was pending between them and that Mother made no attempt to consult with Father before providing C.R.C. with her maiden surname. *See* Petition for Change of Name, 2/19/2002, at 1–2. Mother filed her Answer on February 26, 2002. Mother's Answer indicated that a divorce action had been filed and that she stated to Father prior to C.R.C.'s birth that C.R.C.'s surname would be her maiden surname and that Father did not object at that time. *See* Answer to Petition for Change of Name, 2/26/2002, at 1.

¶ 5 A hearing was held on April 3, 2002, in the Court of Common Pleas of Lycoming County. Following the hearing, the trial court granted Father's Petition and ordered that C.R.C.'s surname be changed to Father's surname. Mother filed a timely Notice of Appeal to this Court on April 18, 2002. The trial court ordered Mother to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925(b). Mother complied with the order and filed the Pa.R.A.P.1925(b) Statement. The trial court did not author a new Pa.R.A.P.1925(a) Opinion but, instead, relied upon its findings at the hearing.

¶ 6 Mother presents the following two questions for our review:

I. Was it an abuse of discretion for the trial court to grant Father's petition for Change of Name where the evidence was insufficient to support the decision?

II. Was the trial court's decision unconstitutional where it failed to consider the Mother–Child relationship and followed the tradition of patrilineal naming?

Mother's brief, at 4.

¶ 7 We first note our standard of review. In the case of *In Re: Schidlmei-er*, 344 Pa.Super. 562, 496 A.2d 1249, 1253 (1985), we held, "[t]he child's best interests unquestionably must control [the trial court's discretion] in a proceeding to change a minor's surname." Further, the party petitioning for the minor child's change of name has the burden of coming forward with evidence that the name change requested would be in the child's best interest, and that where a petition to change a child's name is contested, the court must carefully evaluate all of the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interest. *See In Re: Montenegro*, 365 Pa.Super. 98, 528 A.2d 1381, 1382–1383 (1987) (*citing Schidlmeier*, 496 A.2d at 1253). In that evaluation, neither parent is to be accorded a presumption. *Id.*, 528 A.2d at 1382–1383.

¶ 8 Our Supreme Court adopted the "best interests of the child" standard of review in appeals from the grant of a petition for change of name of a minor child by a non-custodial parent in *In Re: Grimes*, 530 Pa. 388, 609 A.2d 158 (1992). In *Grimes*, our Supreme Court noted:

> Specific guidelines [for a child's best interests] are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. **However, general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name.**

*Grimes*, at 394, 609 A.2d at 161 (citations

and footnotes omitted) (emphasis added).[2]

¶ 9 We described the "best interest of the child standard" in *Sawko v. Sawko,* 425 Pa.Super. 450, 625 A.2d 692 (1993), as follows:

> The "best interests [of the child]" standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Sawko,* 625 A.2d at 693.

¶ 10 Mother argues first that the trial court abused its discretion because the evidence was insufficient to support the trial court's conclusion that the name change was appropriate. A review of the record indicates that the trial court found that the change of C.R.C.'s surname to Father's surname was necessary to aid in the growth of a bond between Father and C.R.C. The trial court found that Mother interfered with the relationship between Father and C.R.C., despite Father's efforts to bond with his child. N.T. Trial, 4/2/2002, at 78–79. The trial court also found that Mother's decision to provide C.R.C. with Mother's maiden surname would create a rift between Father and C.R.C. because Mother might in the future marry another man and take his surname. *Id.* at 82. Further, the court expressed concern that C.R.C. would form bitter feelings against Father because his Mother named him differently in retribution for a disagreement between them, and C.R.C. would face approbation in the community as a child born out of wedlock because he bore his mother's maiden name. *Id.* at 80–81. The trial court found finally that Mother and Father remained married at the time of the hearing, Mother did not petition for legal custody and retained Father's surname at that time. After stating these findings, the trial court ruled that the best interests of C.R.C. required that C.R.C.'s surname be changed to Father's surname. *Id.* at 82–83.

¶ 11 After a thorough review of the record, we find that the trial court abused its discretion when it granted Father's petition. Mother contends that our holding in *In Re: Schidlmeier,* 496 A.2d at 1254, mandates that we reverse the grant of Father's petition. In *Schidlmeier,* a child, Jessica, was born to Paul Koslof and Dona Schidlmeier after the two had separated but remained married. *Schidlmeier,* 496 A.2d at 1251. Schidlmeier used Koslof's surname before the separation but began

---

2. The rules governing the designation of surnames of children born in wedlock are found in 28 Pa.Code § 1.7, which states:

(a) The designation of a child's name, including surname, is the right of the child's parents. Thus, a child's surname as recorded on its birth certificate may be the surname of either or both of the child's parents, a surname formed by combining the surname of the parents in hyphenated or other form, or a name which bears no relationship to the surname of either parent.

(b) If the parents are divorced or separated at the time of the child's birth, the choice of surname rests with the parent who has custody of the newborn child.

to use her birth name, Schidlmeier, after the separation. *Id.,* 496 A.2d at 1251. Accordingly, when Jessica was born, Schidlmeier chose her maiden surname for the child. *Id.,* 496 A.2d at 1251. Approximately 18 months later, Koslof filed a petition to change Jessica's surname to Koslof. *Id.,* 496 A.2d at 1251. The trial court granted Koslof's petition, and Schidlmeier appealed. On appeal, we found that Koslof failed to meet his burden of demonstrating that the name change was in Jessica's best interests. *Id.,* 496 A.2d at 1253. We held that Koslof's mere allegation that the name change was in Jessica's best interests, without more, failed to meet Koslof's burden. *Id.,* 496 A.2d at 1253–1254. We further held that the trial court's rationale that the tradition and custom of patrilineal naming did not provide a sufficient rationale to sustain a conclusion that the name change was in Jessica's best interests. *Id.,* 496 A.2d at 1254.

¶ 12 In the present case, like *Schidlmeier,* the trial court is unable to present a sufficient rationale to justify its grant of Father's Petition to change of C.R.C.'s name. Mother attacks the sufficiency of the trial court's rationale by contending that Father was not involved with C.R.C. and was not supportive. Mother claims that Father was not supportive because he did not visit C.R.C. often in the hospital or after his release, that he did not contact Mother enough regarding C.R.C. and that he was not interested in caring for C.R.C. because he did not arrange for visitation through the parties' attorneys. Father testified at the hearing that he was concerned for the health of C.R.C. and Mother because of several complications following birth, and he wanted to give them time to improve without confrontation. N.T. Trial, 4/3/2002, at 31. Father further testified that he did not contact Mother regarding C.R.C. at work because he did not wish to involve her co-workers in their personal

business, and he testified that when he did speak to Mother at work, she was very curt and dismissive. *Id.* at 25, 32. Father finally testified that he bore no animosity towards Mother and that he did not have his attorney contact her about visitation because he wanted to settle the visitation and custody issues regarding C.R.C. with each other. *Id.* at 32. The trial court found Father's testimony credible, and we do not disturb the trial court's credibility findings. *See S.M. v. J.M.,* 811 A.2d 621, 623 (Pa.Super.2002) (on issues of credibility and weight of the evidence, appellate courts defer to the trial court).

¶ 13 Although Father's testimony regarding Mother's interference in the relationship between C.R.C. and Father is credible, Mother's interference in that relationship does not, by itself, render the trial court's grant of Father's petition proper. It is evident from the record that the trial court made an effort to apply the general factors for consideration regarding petitions for change of name pronounced by our Supreme Court in *Grimes* (the natural bonds between parent and child; social stigma or respect afforded a particular name; and whether the child intellectually and rationally understands the significance of changing his name). Nevertheless, *Grimes* provided little assistance to the trial court's analysis because the trial court found the bonds between Father and C.R.C. had not yet formed because of Mother's interference in their relationship. Therefore, it is impossible for Father to show that a bond existed between he and C.R.C. such that it would be proper for the trial court to change C.R.C.'s surname to Father's surname.

¶ 14 Moreover, we are unclear how a change in C.R.C.'s surname would serve to foster a bond between Father and C.R.C. Father cannot argue Mother would

provide access to C.R.C. as a result of the name change, nor does Father present evidence that his name is held in higher esteem in the community. If it is Father's intention to forge a strong and nurturing relationship with C.R.C., Father is able to seek legal redress for visitation and custodial rights. We are unwilling to find that C.R.C.'s name alone will provide a basis for a relationship with Father, nor are we willing to accept the trial court's speculative conclusion that C.R.C.'s relationship with his Father, when developed, will suffer as a result of their different surnames. Accordingly, after a thorough review of the facts, we are constrained to conclude that the trial court abused its discretion when it found in favor of Father. Therefore, its order granting Father's petition is without support and may not stand.[3]

¶ 15 As we have reviewed the record and determined the trial court abused its discretion, we reverse its Order of April 17, 2002, granting Father's petition.

¶ 16 Order reversed.

¶ 17 LALLY–GREEN, J. Concurs in the Result.

---

3. We do not address Mother's second argument because we have reviewed the record and determined the trial court abused its discretion. Accordingly, there is no need to analyze the constitutional dimensions of Mother's argument. *Ballou v. State Ethics Commission,* 496 Pa. 127, 129, 436 A.2d 186, 187 (1981) (when a case raises constitutional and non-constitutional claims, a court should not reach the constitutional issue if the case can be decided on non-constitutional grounds).