19 A.3d 1068 (2011)
In re Change of Name of E.M.L. to E.M.S.
Appeal of L.D. and J.L., Birth Parents.
No. 1034 MDA 2010.
Superior Court of Pennsylvania.
Submitted November 1, 2010.
Filed April 7, 2011.
*1069 William G. Tressler, Bellefonte, for appellants.
David R. Crowley, Public Defender, Bellefonte, for appellee.
BEFORE: STEVENS, SHOGAN and COLVILLE[*], JJ.
OPINION BY SHOGAN, J.:
L.D. and J.L. ("Appellants"), birth parents of E.M.L., appeal from the order entered on May 18, 2010, in the Court of Common Pleas of Centre County, granting the petition of E.M.L. to change his surname. Upon review, we affirm.
Fifteen-year-old E.M.L. had been living with the same foster family since he was removed from the care of his birth parents at the age of one and a half. E.M.L. approached his attorney, Assistant Public Defender John P. Pendergast, with a request to change his surname from that of his birth father, J.L., to that of his foster family's. On March 23, 2010, E.M.L., through Attorney Pendergrast, filed a Petition for Special Relief, which contained the Petition for Change of Name.
On May 18, 2010, the trial court conducted an evidentiary hearing where testimony was taken from E.M.L. and E.M.L.'s birth mother, L.D. Centre County Children and Youth Services, as E.M.L.'s legal custodian, took no position in the proceeding. At the conclusion of the proceeding, the trial court granted E.M.L.'s petition and entered the Decree of Name Change.
On June 17, 2010, Appellants filed the instant appeal from that order. They subsequently filed a timely Pa.R.A.P. 1925(b) statement and the trial court authored a Pa.R.A.P. 1925(a) Opinion.
Appellants present the following two questions for our review:
I. Did the minor child lack standing to bring the petition on his own behalf?
II. Did the Court abuse its discretion in finding that the name change would be in the minor child's best interest?
Appellants' Brief at 5.
The appellate standard of review involving a petition for change of name, regardless of the age of the petitioner, is whether or not there was an abuse of discretion. In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, 530 Pa. 388, 390, n. 1, 609 A.2d 158, 159, n. 1 (1992). When considering a petition to change the name of a minor child, the best interest of the child should be the standard by which a trial court exercises its discretion. Id. This Court has further held:
the party petitioning for the minor child's change of name has the burden of coming forward with evidence that the name change requested would be in the child's best interest, and that where a petition to change a child's name is contested, the court must carefully evaluate all of the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interest.
In re: C.R.C., 819 A.2d 558, 560 (Pa.Super.2003).
Appellants first argue that E.M.L. lacked standing to bring the petition on his own behalf because he is a minor. Appellants' Brief at 8. Appellants make the assertion that, as a matter of public policy, *1070 "minor children should not be accorded standing to initiate such legal actions absent express statutory authority." Id. Appellants also assert that legal custody of E.M.L. resides with Centre County Children and Youth Services, and since they did not bring or join in the Petition for Special Relief/Petition for Change of Name, there was no standing for the action to be brought. Id. Appellants further claim that there is no statutory authority entitling E.M.L. to change his own name. Id.
The relevant statute pertaining to name changes provides:
The court of common pleas of any county may by order change the name of any person resident in the county.
54 Pa.C.S.A. § 702. In addressing this statute in the context of a petition for the name change of a minor, our Supreme Court has concluded:
The statutory scheme sets forth no criteria for the court to consider when exercising its discretion upon a petition for change of name. The only prohibition within the statute appears at § 705: "Any person violating the provisions of this chapter for purpose of avoiding payment of taxes or other debts commits a summary offense."
In Re: Grimes, 530 Pa. at 391, 609 A.2d at 160. The Court also noted the procedural requirements for the petition.[1] After considering these provisions, the Court further stated:
The focus of the statute and the procedures thereunder, indicate a liberal policy regarding change of name requests. The necessity for judicial involvement centers on governmental concerns that persons not alter their identity to avoid financial obligations. Beyond requiring compliance with the notice provisions, the statute provides no additional guidance for courts considering petitions for change of name. Absent any legislative criteria, courts reviewing petitions for change of name exercise their discretion "in such a way as to comport with good sense, common decency and fairness to all concerned and to the public."
In Re: Grimes, 530 Pa. at 392, 609 A.2d at 160 (quoting Petition of Falcucci, 355 Pa. 588, 592, 50 A.2d 200, 202 (1947)).
While Appellants assert there is no statutory authority entitling E.M.L. to petition to change his name, we find no statutory authority prohibiting E.M.L. from seeking a name change. 54 Pa.C.S.A. § 702 itself sets forth no criteria for the court to consider when exercising its discretion upon a petition for change of name, aside from residency requirements, and Appellants make no claims that the residency requirement was not met.
Additionally, as outlined in In Re: Grimes, as long as the procedural requirements are met and the change of name is not sought for purposes of defrauding creditors, the court has broad discretion in considering a petition for name change. In Re: Grimes, 530 Pa. at 392, 609 A.2d at 160. Again, Appellants make no claims that the procedural requirements were not met, or that the name change was sought for fraudulent purposes.
Contrary to Appellants' assertions, there is no indication, statutorily or in case law, that 54 Pa.C.S.A. § 702 does not apply specifically to minor children, or that a minor is not entitled to the benefits of *1071 section 702 until attaining majority.[2] This Court has stated that while "a court would be reluctant to grant a very youthful minor's petition for a change of name ... our reluctance does not constitute a prohibition against granting a minor's petition for change of name." Petition of Christjohn, 286 Pa.Super. 112, 428 A.2d 597, 599 (1981). Additionally, Appellants rely on the Court's statement in In re: Grimes that "such petitions are commonly brought by the child's natural or legal guardian pursuant to Pa.R.Civ.P. 2026, et seq." to establish that a minor cannot bring such a petition. Appellants' Brief at 9. This statement is simply commentary on the procedure commonly followed in bringing such a petition and does not establish that a petition for a minor may only be brought by the child's natural or legal guardian. See In re: Grimes, 530 Pa. at 392, n. 3, 609 A.2d at 160, n. 3.
Furthermore, with regard to actions brought by minors, Pennsylvania Rule of Civil Procedure 2027 provides:
When a party to an action, a minor shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor.
Rule 2026 defines "guardian" as the party representing the interest of a minor party in any action, whether a guardian appointed by a court of competent jurisdiction, a person in the nature of a next friend, or a guardian ad litem. Pa.R.C.P. 2026. Additionally, Rule 2031(a) provides that a minor plaintiff may select a guardian. Pa. R.Civ.P. 2031(a). Here, Attorney Pendergrast, as guardian ad litem, brought the petition on E.M.L.'s behalf. He adequately supervised and controlled the conduct of the action on behalf of E.M.L. We also note that no one has more of "a substantial, direct, and immediate interest in the subject-matter litigation" than E.M.L., which is the requirement for standing recognized by Appellants in their brief. See Appellants' Brief at 8.
In summary, neither the statutory scheme nor case law prohibits E.M.L. from bringing a petition for a name change as a minor. E.M.L. proceeded via his guardian ad litem throughout the proceedings. Accordingly, Appellants' claim that E.M.L., by and through his guardian ad litem, lacked standing to bring this petition is without merit.
Appellants next contend that the trial court abused its discretion because the evidence was insufficient to support the conclusion that the name change was in E.M.L.'s best interest. Appellants' Brief at 9. In adopting the "best interests of the child" standard of review in appeals from the grant of a petition for the name change of a minor, our Supreme Court has stated:
Specific guidelines [for a child's best interests] are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. However, general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name.
*1072 In Re: Grimes, 530 Pa. at 394, 609 A.2d at 161.
In this case, E.M.L. was removed from his birth parents' care and placed with his foster family when he was one and a half years old. N.T., 5/18/10, at 6. At the time of the hearing, E.M.L. was fifteen years old and had been living with his foster family for twelve and a half years. Id. During the hearing, E.M.L. testified that he considers his foster family to be his family. Id. When asked about his connection with his biological parents, E.M.L. responded: "Connection? There's not much connection anymore because we don't visit anymore and I have no interest in it." Id. E.M.L. testified that he understood what it meant to have his name changed and that he wanted to change his name to be the same as that of his family's. Id. at 6-7. E.M.L. had approached Attorney Pendergast with the request to change his name. Id. E.M.L. had gone so far as to write a letter outlining his desire to discontinue visitations with his birth parents. Id. This letter was admitted into evidence during the evidentiary hearing. Id. at 7-8. The substance of the letter consists of the following:
It all started when my brother and I were at a visit with my biological parents. I was sitting by my biological mom and, as usual she was complaining to my biological dad about my brother [W.] and how he shouldn't be there.
Their argument about my brother morphed into one about their truck. My biological mom claims to own it, my biological dad claims that they both do. Of course my mom was just trying to get into an argument with my dad, she didn't care about what. Somehow, the argument got out of hand and she took a swing at my dadhitting him. He hit her right back while I was sitting by them.
At that point, my caseworker, and [D.]'s, said it was time to leave; that the visit had ended.
When I got home I told my mom and dadmy real familyabout what had happened. I said that it had scared me. After a few phone calls, my case worker scheduled an appointment to see my attorney. My brother [D.] and I went to see our attorney and we told her what had happened; how our mother always complains, and that we don't feel safe there because of our brother [W.]. We told her that we didn't want to go to the visits with our parents anymore. We left, and I went home and told my mom and dad about it. They told me how proud of me they were because I stood up for myself and said what was on my mind.
Two weeks later my attorney called and said that a court hearing was scheduled to discuss the visits and a six-month check-up. Well I told my mom, she said that I just had to tell the judge what I told my attorney. She promised that she would be there in court to support me, and she was.
On Wednesday, I left school and met my brother [D.] and his [foster] mom at the court. When we got to the courtroom, [D.] and I sat in the way back to avoid our biological mother. The lawyers started to talk about how [D.] and I were doing in our foster homes, and then they brought up the visits and what had happened to [sic] the last one when my biological parents were being violent with each other.
Our caseworkers said they had tried to improve the visits, but that nothing seemed to help because my mom would always complain about [W.]. When the judge made [sic] decision, he said that if [D.] and I wanted visits with our parents, *1073 we could schedule them with our caseworkers.
I felt so proud that finally someone had listened to us. A week later my new attorney John said that my biological mom's attorney, Bill Tressler, wrote a note to my caseworker protesting the judge's decision. The note said that visits needed to be scheduled routinely, then [D.] and I would be asked if we wanted to visit just our biological dad or not.
I got so upset; I had thought the court case was the end of it. When my caseworker came out to my home, she asked me if I wanted to go to the monthly visit with my biological dad, and I said "NO." The next time my caseworker came out to my home, I asked if I could be adopted. I want to be adopted, or at least have my biological parent's [sic] parental rights terminated until I can be adopted. My caseworker said that if I want to initiate adoption, my biological mom would fight it and it would go to the [S]uperior [C]ourt of Pennsylvania, then to the Supreme Court of Pennsylvania. It might take 1.5 years to 2.5 years for a decision to be made. By that point, I will only be a year or so away from being 18, when I can make my own decision.
My mom called all of my sisters to tell them what I was going through. My three sisters told me not to worry. I know I have the greatest family ever I [sic] the whole world.
Petitioner's Exhibit, N.T., 5/18/10, "We should have rights too," by E.M.L., 10/31/09.
E.M.L.'s birth mother, L.D., testified as follows regarding her reasons for opposing E.M.L.'s petition for name change:
Not until he's 18 until he's old enough. He's too young. And the only thing, I don't want him hurtin' my other kids because that will take a reverency (sic.) on my other kids. He don't think that it will but it will.
And I don't think he should be able to change his name until he's 18, until he's old enough and mature enough. He's too young now. He's too young and I don't think his name should be changed `til he's 18.
N.T., 5/18/10, at 11-12.
In this case, the petitioner, E.M.L., is a mature fifteen-year-old who was able to articulate the reasons for his desire to change his name to that of his foster family's. As is evidenced by his testimony, he intellectually and rationally understands the significance of his proposed name change. E.M.L. has had very little interaction with his birth parents, and as evidenced by his testimony and letter, has no desire to continue any relationship with either of his birth parents. E.M.L. has been cared for, almost his entire life, by the foster family that he considers to be his "real family." E.M.L.'s birth mother's opposition to the name change is based on nothing more than her bald statements that E.M.L. is too young and that she believes the name change would somehow negatively impact her other children. The request to change his surname reflects E.M.L.'s desire to bind himself more closely to those whom he considers to be his "real family." We agree with the trial court's determination that doing so would be in E.M.L.'s best interest. Therefore, we conclude that, based on the record, the trial court did not abuse its discretion in finding that the name change was in the best interest of the child and consequently granting the petition for name change.
Order affirmed.
NOTES
[*] Retired Senior Judge assigned to the Superior Court.
[1] At the time of the decision in In re: Grimes, the procedural requirements for court-approved name changes were set forth at 54 Pa.C.S.A. § 101 et. seq. This provision was repealed effective January 31, 2005 and the procedures for court-approved name changes are now set forth at 54 Pa.C.S.A. § 701 et. seq.
[2] Consistent with well-established case law, as well as the Pennsylvania Rules of Civil Procedure discussed infra, we cannot accept Appellants' position that 54 Pa.C.S.A. § 703 prohibits a minor's petition for change of name. In fact, as noted by Appellee, our Supreme Court rejected this standing argument as to a similar provision in the earlier version of this statute in Petition of Falcucci, 355 Pa. 588, 594, 50 A.2d 200, 203 (1947).