J-S27026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.P.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.J.B.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1504 WDA 2018 |

Appeal from the Order Entered September 13, 2018
In the Court of Common Pleas of Jefferson County
Civil Division at No(s):  No. 465 CD 2018

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 6, 2019**

K.J.B.R. ("Mother"),[1] appeals from the order entered September 13, 2018, in the Jefferson County Court of Common Pleas, granting in part and denying in part the petition of B.V. ("Father"), to change the name of the parties' child, K.P.B. ("Child").  Although Father sought to change Child's name to K.P.V., the order directed that Child be named K.P.B.-V., retaining both Mother's maiden name and Father's surname.  For the reasons below, we reverse.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The original caption in this appeal designated Mother's initials as "K.J.B." The "B" represents her maiden name, the same surname as the parties' child, K.P.B.  However, Mother testified that she now uses her current husband's surname, which begins with the letter "R," in addition to her maiden name. Accordingly, because the focus of this appeal is what surname is in the best interests of the child, we direct the Prothonotary to correct the caption to reflect Mother's proper name as "K.J.B.R."

The facts underlying this appeal are as follows. Mother was previously engaged to her current husband, J.R., but called off the engagement. She then dated Father for a few months before rekindling her relationship with J.R. During that time, she became pregnant with Child. She did not know whether Father or J.R. was the father of her unborn child. *See* N.T., 8/17/2018, at 6, 36-37. Child was born in February of 2014, and Mother gave Child her maiden surname.[2] Father petitioned for a paternity test in April of 2014, two months after Child's birth, and his paternity was established in July of 2014. Father filed a complaint for partial custody in October of 2014. *See id.* at 48-50.

In October of 2015, Father filed a petition for name change in Elk County, which was denied by the trial court. Father testified the court denied the petition because Mother "stated that she'd always have the last name [B.]"[3] *Id.* at 6. However, sometime thereafter, Mother married her current husband, added his last name to her maiden name, and now is known as

_____

[2] Pursuant to the Section 1.6 of the Pennsylvania Administrative Code:

> The child of an unmarried woman may be registered with any surname requested by the mother. If no other surname is requested, the child shall be registered with the mother's surname.

28 Pa.Code § 1.6.

[3] Mother admitted this during her testimony. She explained she was unmarried at the time of the prior hearing, and stated she "would always have [her] last name as [B.]" N.T., 8/7/2018, at 25.

K.J.B.R.[4]  Mother and J.R. have one child, who has J.R.'s last name, and are expecting a second child, who will also have J.R.'s last name. ***See id.*** at 53-54.  Father has primary custody of two older children (not by Mother), both of whom bear his last name. ***See id.*** at 4.

On May 7, 2018, Father filed the present petition seeking to change Child's name to K.P.V.  Following a hearing, on September 11, 2018, the trial court entered an order, accompanied by Findings of Fact, which granted in part and denied in part Father's petition.  Specifically the trial court declined to eliminate Mother's maiden name from Child's name, but directed that Child be known by both Mother's maiden name and Father's surname, that is, K.P.B.-V.  This timely appeal by Mother follows.[5]

Mother lists 13 issues in her statement of questions presented.  However, she concedes that many of her claims are repetitive and should be incorporated into her primary argument[6] that the trial court abused its discretion when it found Father met his burden of establishing a name change was in Child's best interests. ***See*** Mother's Brief at 20.

We begin by noting our standard of review of an order granting or denying a petition for a name change is an abuse of discretion. ***T.W. v. D.A.***,

---

[4] She testified that both her maiden name and married name appear on her driver's license and bank account. ***See id.*** at 26.

[5] Mother complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

[6] ***See*** Mother's Brief at 27-30.

127 A.3d 826, 827 (Pa. Super. 2015), *citing* **In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia**, 609 A.2d 158 (Pa. 1992). "An abuse of discretion exists if the trial court has overridden or misapplied the law, or if the evidence is insufficient to sustain the order." **Id.**

> The statute pertaining to name changes provides: "The court of common pleas of any county may by order change the name of any person resident in the county." 54 Pa.C.S.A. § 702(a). Other than providing for the granting of a petition in the absence of any lawful objection, the statute sets forth no standards for the court's exercise of its discretion. Our Supreme Court has directed the lower courts to exercise their discretion, in name change cases, in such a way as to "comport with good sense, common decency and fairness to all concerned and to the public." **Petition of Falcucci**, 355 Pa. 588, 50 A.2d 200, 202 (1947).

> In 1992, the Pennsylvania Supreme Court declared that when considering a contested petition to change the name of a minor child, the best interest of the child is the standard by which a trial court exercises its discretion. **See Grimes**, 609 A.2d at 161 [] (citing comprehensive list of jurisdictions that apply best interest of child standard). In adopting the "best interests of the child" standard, our Supreme Court stated:

>> *The statutory scheme sets forth no criteria for the court to consider when exercising its discretion upon a petition for change of name.* The only prohibition within the statute appears at § 705: "Any person violating the provisions of this chapter for purpose of avoiding payment of taxes or other debts commits a summary offense." ... Specific guidelines [for a child's best interests] are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. However, *general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name*.

- 4 -

*Id.* at 160, 161 (emphasis added). The Court further stated: "Beyond requiring compliance with the notice provisions, the statute provides no additional guidance for courts considering petitions for change of name." *Id.* at 160 (quoting *Petition of Falcucci*, *supra* at 202.) *See also In re Change of Name of E.M.L. to E.M.S.*, 19 A.3d 1068 (Pa. Super. 2011).

In *In re: C.R.C.*, 819 A.2d 558 (Pa. Super. 2003), this Court stated that the party petitioning for the minor child's change of name has the burden of coming forward with evidence that the name change would be in the child's best interest. *Id.* at 560. Further, where a petition to change a child's name is contested, the court must carefully evaluate all of the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interest. *Id.*; *see also Petition of Christjohn*, 286 Pa.Super. 112, 428 A.2d 597 (1981).

*Id.* at 827-828.

In determining whether Father established that a name change was in Child's best interest, the trial court noted the general considerations identified in *Grimes*, *supra*, did not weigh in favor of granting Father's petition. Rather, the court stated, "the evidence indicated that the child had bonded with both parties, that both family names were well regarded, and that the child was too young to appreciate the significance of changing his name."[7] Trial Court

_____

[7] In its initial findings of fact, the court explained:

Father did not file this petition to avoid creditors, judgments or criminal record on behalf of the minor child. Further, this Court finds that both the [V.] and [B.] names have fine and stellar reputations in the St. Marys and surrounding communities, both in the communities , in their respective work industries, as well as in the Catholic Church. Further, the child knows his mother does not live with his father and his father is a [V.] Mother, by not allowing Father to exercise custody or visitation or be a part of the

Opinion, 1/3/2019, at 1. Nevertheless, the trial court emphasized that the *Grimes* considerations were not exclusive, but simply part of a "best interests" analysis. The court opined:

> In this case, the overall best interests analysis included the fact that [Mother] never wanted [Father] to be part of their son's life. As the testimony indicated, she avoided his attempts to establish paternity until a court order compelled her cooperation and forced him to sue for custody before allowing him to see the child even though the circumstances of the child's conception were such that she suspected that he was in fact the biological father. Four years later, she was not even willing to add [Father's surname] after [her maiden name] and, testifying in opposition to [Father's] petition, was willing to downplay or misrepresent his efforts to determine whether the boy was his and, thereafter, to establish a father-son relationship.

> What the record indicated to the Court, therefore, was that changing the child's last name to reflect his paternity was in fact in [Child's] best interests and, more specifically, that [Mother's] apparent disregard for his relationship with his father made it important that the two share a last name.

*Id.*

Mother insists the trial court's ruling constitutes an abuse of discretion. She argues the court found she "never wanted [Father] to be a part of their son's life, that she avoided his attempts to establish paternity, that he was forced to sue for custody to be able to see [C]hild, and that [Mother] was willing to downplay or misrepresent [F]ather's efforts to determine whether the boy was biologically his." Mother's Brief at 21. However, Mother insists

_____

child's life, effectively decided she would eliminate the [V.] name on her own.

Findings of Fact, 9/13/2018, at unnumbered 5.

none of these findings "establish how changing [C]hild's surname … is in the best interest of the child." *Id.* Indeed, Mother contends the court's "focus seems to be on punishing [her] for the trial court's findings that she attempted to thwart [F]ather's efforts with his child," despite the fact that "all witnesses testified that a strong bond exists between [F]ather and [C]hild." Mother's Brief at 26-27.

We are constrained to agree. The record simply does not support the court's conclusion that a name change is in Child's best interest. Indeed, as the trial court acknowledged, all of the witnesses testified that Father has a strong bond with Child, despite Mother's initial unwillingness to foster it. However, there was no testimony that Mother has continued to thwart Father's relationship since his paternity was established and he was awarded partial custody. Father explained he sought to change Child's last name because he felt "it's important for [Child] to have [his] last name" since Child no longer has the same last name as Mother. N.T., 8/7/2018, at 7. Further, Father testified he believed it was important for Child to have the same last name as his other children because "it ties [them] together as a family" and [d]own the road, [Father] think[s] that [Child] would wonder why he doesn't have the same last name as [Father's other] son and daughter or anybody else really other than his grandparents." *Id.* at 11.

We find this Court's decision in *C.R.C.*, *supra*, instructive. In that case, mother and father were married, but separated, at the time of mother's pregnancy. Mother refused to put father's surname on the child's birth

certificate because she claimed father was unwilling to add the child to his health insurance. **See C.R.C.**, **supra**, 819 A.2d at 559. Father made various efforts to see the child and offer financial assistance, all of which mother refused. **See id.** Less than two months after the child's birth, father filed a petition to change child's surname to his. Following a hearing, the trial court granted father's petition. **See id.** at 560. The court found the name change was "necessary to aid in the growth of a bond between Father and C.R.C." because mother had interfered with their relationship, "despite Father's efforts to bond with his child." **Id.** at 561. The court was also concerned child might develop "bitter feelings" toward father because child was named differently as a result of a disagreement between his parents, and that child might face "approbation in the community as a child born out of wedlock because he bore his mother's maiden name." **Id.**

On appeal, a panel of this Court reversed the trial court's order. The panel opined:

> Although Father's testimony regarding Mother's interference in the relationship between C.R.C. and Father is credible, Mother's interference in that relationship does not, by itself, render the trial court's grant of Father's petition proper. It is evident from the record that the trial court made an effort to apply the general factors for consideration regarding petitions for change of name pronounced by our Supreme Court in **Grimes** (the natural bonds between parent and child; social stigma or respect afforded a particular name; and whether the child intellectually and rationally understands the significance of changing his name). Nevertheless, **Grimes** provided little assistance to the trial court's analysis because the trial court found the bonds between Father and C.R.C. had not yet formed because of Mother's interference in their relationship. Therefore, it is impossible for Father to show

- 8 -

that a bond existed between he and C.R.C. such that it would be proper for the trial court to change C.R.C.'s surname to Father's surname.

Moreover, we are unclear how a change in C.R.C.'s surname would serve to foster a bond between Father and C.R.C. Father cannot argue Mother would provide access to C.R.C. as a result of the name change, nor does Father present evidence that his name is held in higher esteem in the community. If it is Father's intention to forge a strong and nurturing relationship with C.R.C., Father is able to seek legal redress for visitation and custodial rights. We are unwilling to find that C.R.C"s name alone will provide a basis for a relationship with Father, nor are we willing to accept the trial court's speculative conclusion that C.R.C's relationship with his Father, when developed, will suffer as a result of their different surnames. Accordingly, after a thorough review of the facts, we are constrained to conclude that the trial court abused its discretion when it found in favor of Father. Therefore, its order granting Father's petition is without support and may not stand.

*Id.* at 562-563.

Similarly, in the present case, the trial court's basis for granting, in part, Father's petition is Mother's intial "interference" in Father and Child's relationship, and specifically, her attempt to deny his paternity. Nevertheless, the record reveals that Father and his extended family now have a good relationship with Child. *See* N.T., 8/7/2018, at 8. Moreover, he conceded the fact that Child's last name is Mother's maiden name, "doesn't affect the relationship." *Id.* at 12. Indeed, Father failed to present any evidence that changing Child's last name was in Child's best interest.[8]

---

[8] We emphasize that if Child had been older at the time of the name change hearing, the significance of having a last name different from either his mother or father would be relevant to the determination of his best interest.

We understand the trial court's frustration with Mother's efforts, initially, to deny Father's paternity, particularly in light of her admission that she did not know who the father of Child was. **See** N.T., 8/7/2018, at 42-43. Indeed, Mother conceded she "would have liked" her current husband to adopt Child to give him a "stable home." **Id.** at 49-50. In addition, we recognize the court's order was an attempt at a compromise, so that Child could "enjoy the reputation of both names." Findings of Fact, 9/13/2018, at unnumbered 5. However, under the prevailing case law, Father was required to demonstrate that a name change is in Child's best interest. Because we conclude evidence concerning Child's best interest is lacking, we are compelled to reverse the order granting, in part, Father's petition.[9]

Order reversed.

---

[9] We note, too, the fact that Mother purportedly stated at the first name change hearing that she would always use her maiden name does not provide us a basis to affirm the court's order. Indeed, Mother presented both her driver's license and checking account to the court to demonstrate she still retains her maiden name, albeit with her married name after it. **See** N.T., 8/7/2018, at 25. Moreover, our review of the record reveals no support for the court's finding that Mother stated in the prior hearing that even if she remarried, her children would retain her maiden name. **See** Findings of Fact, 9/13/2018, at unnumbered 1, 3, 4.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019