J-A22010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELENA SABAKAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID TYLER STACY | : | No. 1329 WDA 2023 |

Appeal from the Order Entered October 12, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-18-008202-005

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED: October 28, 2024**

Elena Sabakar (Mother) appeals, *pro se*,[1] from the order denying her petition to change the name of her eight-year-old son (Child). After careful review, we affirm.

The trial court summarized the underlying factual and procedural history:

> Mother and [David Tyler Stacy (Father)] were divorced in Allegheny County, Pennsylvania, in November of 2018, but continued to litigate issues arising from the Divorce Settlement Agreement, as well as custody of the Child. Mother and Father currently have shared custody of the Child, although both parents have recently filed claims to modify that arrangement. Mother filed her Petition for a Name Change on June 12, 2023, and

---

[1] Although this Court will "liberally construe materials filed by a *pro se* litigant, [an] appellant is not entitled to any particular advantage because [she] lacks legal training." ***Elliot-Greenleaf, P.C. v. Rothstein***, 255 A.3d 539, 542 (Pa. Super. 2021) (citation omitted).

requested that Mother's last name be added to the Child's name. Father[ (who was represented by counsel)] opposed the change[,] and a hearing on the matter was held on October 2, 2023, at which time both parents testified.

Trial Court Opinion, 12/28/23, at 1-2 (footnotes in original omitted; one footnote added).

Prior to the taking of testimony, the trial court briefly summarized "off-the-record discussions with the parties regarding the … motion of [M]other to have [Child]'s name changed." N.T., 10/2/23, at 3. Mother neither contested nor objected to the trial court's summary. *See id.*

Mother began her testimony by reading from a list she attached to the name change petition (Exhibit A), which detailed "non-legal and non-administrative" and "legal and administrative" reasons for requesting Child's name change. *See* N.T., 10/2/23, 4-6; *see also* Petition for Name Change, 6/12/23, Exhibit A. Most of Mother's "non-legal" reasons for requesting Child's name change were duplicative, and "focused on the name as a connection to Mother's lineage and heritage."[2] Trial Court Opinion, 12/28/23, at 4. Additionally, Mother argued "that even though … [S.] is [a] male and female name… [Child] was bullied in school, and it brought [Child a] large degree of discomfort when he was going to school." N.T., 10/2/23, at 6. Concerning

---

[2] In her brief, Mother states she is "a dual citizen of Russia and the U.S., [and] reverted to her maiden last name" following Mother and Father's divorce. Mother's Brief at 5.

her "legal" reasons, Mother argued Child's new name would "facilitate[] and simplif[y] legal and administrative matters[,] … and international travel." *Id.*

However, Mother emphasized "that there are two major reasons" she sought a name change for Child: 1) "I want [C]hild to carry my family's last name going forward"; and 2) "I [] want [Child] to be equal [with, and] on the same level [as,] his half[-]brother[,] who already has a double last name" comprised of the surnames of Father and Father's "new wife." *Id.* at 3-4.

Father disagreed, and testified concerning his fear that Mother would use Child's name change to facilitate permanently removing Child to Russia. *See generally id.* at 17-37. Father testified that Mother told him "she has no reason to keep [Child] in this country[,] and said it would be more beneficial for her to take [Child] to Russia because of free healthcare and better education." *Id.* at 17. Father explained he recalled at least three occasions where Mother threatened to take Child to Russia. *Id.* at 23. Father introduced a two minute, forty-eight second video recording (the recording) of one such occasion, which he argued corroborated his testimony. *See id.* at 24.

Mother objected to the trial court hearing the recording, claiming it was only a portion of a three-hour video. *See id.* at 14. The trial court explained that, during her cross-examination of Father, Mother could "establish that [the recording] is an excerpt and … ask [Father] about parts that he did not include …." *Id.* Mother requested permission to provide the entire video to the trial

court following the hearing. *See id.* The trial court responded that "after you cross-examine [Father] about [the recording], if you think it is necessary for you to submit the 3[-]hour[ video], I will consider it at that time." *Id.*

After playing the recording in open court,[3] Father moved for its admission into evidence. *See id.* at 23. Mother objected, claiming the recording was irrelevant as to whether the trial court should permit Child's name change, and renewed her argument that the recording did "not represent the whole conversation." *Id.* at 24-25. The trial court overruled Mother's objection and admitted the recording into evidence. *See id.* at 24. The trial court found the recording relevant to Father's "fears of abduction[,]" which the trial court found "credible." *Id.* at 25. The trial court also reiterated that Mother would have the opportunity to cross-examine Father concerning the recording. *See id.* at 24.

Mother proceeded to cross-examine Father; however, she asked no questions about the recording. *See id.* 27-37. In her closing argument to the trial court, Mother summarized her recollection of other portions of the

_____

[3] The contents of the recording were transcribed and made a part of the certified record. *See generally* N.T., 10/2/23, at 19-23. The recording depicted a portion of a conversation between Mother and Father, wherein Mother complained of significant financial responsibilities. *See id.* at 20-21. Mother further explained that Russia offers free healthcare, and that she had "a paid[-]in[-]full apartment in a good city with very little crime." *Id.* at 21. Mother then questioned Father as to why she "shouldn't consider moving [Child] to Russia[,]" and advised Father that he "can have [Child] for summer[s]." *Id.*

three-hour video that she deemed relevant.[4]  *See id.* at 38.  Following Mother's cross-examination of Father and her closing remarks, Mother did **not** renew her request to submit the entire 3-hour video for the trial court's consideration.

At the conclusion of the hearing, the trial court took the matter under advisement.  On October 6, 2023, the trial court issued an order denying Mother's petition to change Child's name.  On October 16, 2023, Mother filed a motion for reconsideration, which the trial court scheduled for a hearing.  At the October 23, 2023, hearing, Mother provided the trial court with a five-page summary of the three-hour video.  *See* N.T., 10/23/23, at 3; *see also id.* (trial court stating it would review the summary "before deciding [Mother's] motion for reconsideration").  On October 24, 2023, the trial court denied Mother's motion for reconsideration.

Mother timely appealed.  Although the trial court did not order her to do so, Mother filed a concise statement of errors complained of on appeal alleging "the [trial] court erred when it denied [Mother]'s request for [] Child['s] name

---

[4] Mother advised the trial court that "[d]uring the divorce, everybody was emotional, some things were said which are being misconstrued."  N.T., 10/3/23, at 37.  Mother explained that at the time the recording was captured, she was experiencing health problems, and that "[i]n [the] full version of [the recording], I do say that I'm aware of the process of relocation, and that I'm going to hire the best attorney that would be able to prove that it is in the best interest of the [C]hild if I get treatment and don't die.  But that part wasn't played to this [c]ourt today."  *Id.* at 38.

change." Concise Statement, 11/21/23 (capitalization modified). On December 28, 2023, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Mother presents the following issues:

1. Whether the trial court abused its discretion and/or otherwise committed an error of law in establishing what was in the best interest of [] Child?

2. Whether the trial court abused its discretion and/or otherwise committed an error of law by denying Mother's repeated requests to record the proceedings[,] and by denying her request to submit rebuttal evidence, thereby undermining her right to due process?

3. Whether the trial court abused its discretion and/or otherwise committed an error of law in allowing the introduction of inadmissible evidence by Father?

4. Whether the trial court abused its discretion and/or otherwise committed an error of law by permitting an environment of witness intimidation that resulted in significant emotional distress to Mother, affecting her ability to effectively participate in the hearing?

5. Whether the trial court made several errors in facts?

Mother's Brief at 3-4 (some capitalization modified; issues reordered).

Preliminarily, we recognize

> that the established standard of review for cases involving petitions for change of name is whether or not there was an abuse of discretion. ***In Re Zachary Thomas Andrew Grimes***, 609 A.2d 158, 159 n.1 (Pa. 1992) (citing ***Petition of Falcucci***, 50 A.2d 200, 202 (Pa. 1947)). [The Pennsylvania Supreme] Court has also provided us with an understanding of what constitutes an abuse of discretion, as follows:
>
>> An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

- 6 -

> A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.
>
> *Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000) (citing *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1184–85 (Pa. 1993) and *Morrison v. Commonwealth, Dept. of Public Welfare*, 646 A.2d 565, 571 (Pa. 1994)). On matters involving petitions for a change of name, the Supreme Court has often cited the guiding principle first enunciated in *Falcucci*, where it declared:
>
> > Whenever a court has discretion in any matter (as it has in the matter of a change of name) it will exercise that discretion in such a way as to comport with good sense, common decency, and fairness to all concerned and to the public.
>
> *Petition of Falcucci*, 50 A.2d at 202 (cited and restated in *In the Matter of Robert Henry McIntyre (In Re McIntyre)*, 715 A.2d 400, 402 (Pa. 1998); *Grimes*, 609 A.2d at 160).

*In re A.S.D.*, 175 A.3d 339, 341 (Pa. Super. 2017) (citations modified) (quoting *In re Miller*, 824 A.2d 1207, 1210 (Pa. Super. 2003)). "[O]ur scope of review is limited to the question of whether the evidence is sufficient to support the decision reached by the hearing court." *Id.* (citation and quotation marks omitted).

> Further, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if those findings are supported by competent evidence. It is not enough for reversal that we, if sitting as a trial court, may have made a differing finding or reached a different result.

*T.W. v. D.A.*, 127 A.3d 826, 827 (Pa. Super. 2015).

In her first issue, Mother argues that she "provided compelling testimony … that a change in [Child's] name aligns unequivocally with his paramount interests." Mother's Brief at 16.

The statute empowering courts to grant a petition for a name change provides: "The court of common pleas of any county may by order change the name of any person resident in the county." 54 Pa.C.S.A. § 702(a). Although Section 702 offers courts no guidance on what factors to consider when a petitioner seeks to change a child's name, our Supreme Court has adopted the "best interests of the child" standard. *Grimes*, 609 A.2d at 161; *see also id.* ("In adopting this standard in Pennsylvania, we further hold, that a petitioner in such instance must bear the burden of establishing that a change would be in the best interest of said child.").

Our Supreme Court has further explained:

> Specific guidelines are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. However, general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name.

*Id.* (citation and footnote omitted). Where a name change petition is contested,[5] "the court must carefully evaluate all of the relevant factual

---

[5] Describing the procedural requirements for a name change, Section 701 provides, in part, that "[a]ny person having lawful objection to the change of name may appear and be heard." 54 Pa.C.S.A. § 701(a.1)(4)(i).

circumstances to determine if the petitioning parent has established that the change is in the child's best interest." **T.W.**, 127 A.3d at 828.

Instantly, Mother argues the proposed name change was "intended to foster a profound sense of identity":

> It reflects the [C]hild's heritage, an aspect of considerable significance amid the nuanced social dynamics characteristic of Russian-American relations in view of the [C]hild receiving Russian citizenship. This adjustment acknowledges the significance of both parents' ancestries, ensuring the maternal family name's continuation, particularly as the [C]hild represents the sole progeny on the maternal side. It aims to fortify family unity and cohesion, emphasizing the [C]hild's pivotal role within a familial structure that encompasses both parental lineages. Additionally, the revised surname seeks to maintain parity with the [C]hild's half-brother from the paternal side, who bears a hyphenated surname, thus preserving familial symmetry. It addresses and aims to mitigate any potential discomfort, inconvenience, or bullying that may arise from [Child's] current surname's connotation as a female first name in certain contexts. Ultimately, the new name is designed to be distinctive and unique, encapsulating the [C]hild's comprehensive familial heritage and fostering an inclusive identity that bridges diverse cultural backgrounds.

Mother's Brief at 17-18 (record citations omitted).

In its Pa.R.A.P. 1925 Opinion, the trial court addressed Mother's proffered "two major reasons" for Child's name change: 1) for Child to carry on Mother's family name, and 2) for Child "to be equal[, and] on the same level" as his half-brother. Trial Court Opinion, 12/28/23, 3. The trial court observed that "[b]oth reasons center on something that Mother wants, but Mother offered no testimony as to why either would be beneficial to the Child." **Id.**

The trial court continued, providing the following cogent analysis:

Mother also read a list of several reasons for the name change that had been included as an exhibit to the Petition when it was filed. Of the nine reasons offered by Mother, over half focused on the name as a connection to Mother's lineage and heritage. The [trial] court found many of them to be duplicative, but it is worth discussing Mother's argument that the new name would "minimize the effects of discomfort" due to Child's current last name being a "female [first] name." Mother explained that the Child had been bullied in school and that it brought him "a large degree of discomfort." Unfortunately, Mother offered no evidence of such bullying, such as a teacher's testimony or a counselor's report, and the [c]ourt did not find [Mother's] testimony alone to be credible.

In addition to the [] reasons stated above, Mother also argued that the new name would both facilitate and simplify legal and administrative matters[,] as well as international travel. The [trial] court was troubled by these arguments in light of the evidence presented by Father. Father testified that on multiple occasions Mother threatened to relocate with the Child to Russia, where Mother is a citizen by birth. Father presented evidence of one such discussion where he recorded Mother explaining her reasoning for returning to Russia. … Father's testimony and evidence went directly towards Mother's credibility as it called into question her reason for petitioning to change the Child's name. … As such, the [trial] court found that Mother failed to meet her burden to establish that the [name] change would be in the Child's best interests.

In making this determination, the [trial] court considered the factors set forth in **Grimes**. While there was very little testimony offered [regarding] the Child's natural bond with each parent, the [trial] court notes that both parents enjoy significant custody time. Neither parent offered evidence of any social stigma or respect afforded to a particular name. Finally, at just 8[ ]years[ ]old, [] Child is not yet of an age where he could intellectually and rationally understand the significance of changing his name. As testified by Mother, the Child still thinks that a last name has "something to do with custody."

*Id.* at 4-5 (record citations omitted).

Upon review, the trial court's findings are supported by the record, and its legal conclusions are sound. The record confirmed that Mother's proffered reasoning for seeking Child's name change almost exclusively focused on her own desires, rather than on the best interests of Child. This is demonstrated by Mother's first "major" reason for seeking Child's name change. *See* N.T., 10/2/23, at 3-4 (Mother stating she wants Child "to carry [Mother's] family's last name going forward."); *see also T.W.*, 127 A.3d at 828 (petitioner failed to establish name change was in the best interest of the child where petitioner's proffered motive was "to further his own interest in the survival of his surname.").

The only reason Mother offered that arguably implicates Child's best interest is that Child was allegedly ridiculed by classmates for his surname. However, the trial court, sitting as fact-finder, did not find Mother's testimony credible. Given our "narrow standard of review," and considering the trial court's thoughtful analysis, we cannot conclude that the trial court "rendered a judgment that is manifestly unreasonable, arbitrary, or capricious[.]" *Id.* at 827, 830. Accordingly, Mother's first issue merits no relief.

In her second issue, Mother argues that "[b]y not recording substantial portions of the proceedings[,][6] and preventing Mother from introducing

---

[6] Mother argues the informal conference immediately preceding the name-change hearing should have been recorded and transcribed. *See* Mother's Brief at 6.

rebuttal evidence, the [t]rial [c]ourt [] compromised Mother's ability to challenge the evidence against her and to present her case fully."  Mother's Brief at 14-15 (footnote added).  In her argument, Mother does not identify what pertinent information was discussed off the record, or what rebuttal evidence she was not permitted to introduce.[7]  However, in her statement of the case, Mother claims that she "provided most of her testimony by giving a comprehensive analysis of Exhibit A[,] attached to her petition."  Mother's Brief at 6 (record citation omitted).

The Pennsylvania Rules of Civil Procedure permit a trial court, *sua sponte* or upon motion of any party, to convene a pre-trial conference to consider, *inter alia*: a) "[t]he simplification of the issues[,]" b) "[t]he possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof[,]" c) "[s]ettlement and/or mediation of the case[,]" and d) "[s]uch other matters as may aid in the disposition of the action."  Pa.R.C.P. 212.3(a)(1), (3), (5), (6).

Mother cites no authority prohibiting a trial court from engaging in off-the-record preliminary discussions with the parties to an action prior to a

---

[7] To the extent Mother complains the trial court did not allow her to introduce the full, three-hour recording of the conversation between Mother and Father, Mother's claim fails.  As discussed further below, Mother did not request to introduce the full recording following her cross-examination of Father. Further, at the hearing convened on Mother's motion for reconsideration, Mother did not provide the trial court with the full recording.  Instead, Mother elected to provide the trial court with a five-page summary of the conversation, which the trial court considered.

scheduled hearing. ***See*** Pa.R.A.P. 2119(a) (providing that argument shall include "such discussion and citation of authorities as are deemed pertinent."). To the contrary, the Rules of Civil Procedure specifically authorize the practice under appropriate circumstances. ***See*** Pa.R.C.P. 212.3. Further, Mother did not object to the trial court's summary of the pre-hearing conference, nor did she request to place any additional evidence on the record. ***See*** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Jones v. Ott***, 191 A.3d 782, 787 (Pa. 2018) ("In order to preserve an issue for appellate review, a litigant must place a timely, specific objection on the record." (citation omitted)). Based upon the foregoing, Mother's second issue merits no relief.

In her third issue, Mother argues the trial court erred by admitting into evidence the recording proffered by Father. ***See*** Mother's Brief at 15. Mother claims that she preserved this challenge by objecting that the recording "was irrelevant, an edited reproduction of an original, and inadmissible due to the failure of Father to furnish it to Mother for review prior to the trial…." ***Id.*** at 15-16. Mother additionally argues the recording was inadmissible "because it is a reproduction of another recording." ***See id.*** (citing Pa.R.E. 1002 ("An original writing, recording, or photograph is required in order to prove its content ….")).

Initially, the record discloses that Mother objected to admission of the recording only on the bases of relevance and incompleteness. ***See*** N.T.,

- 13 -

10/2/23, at 14, 24-25. Consequently, she has waived her remaining claims of evidentiary error. *See* Pa.R.A.P. 302 (("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Jones*, 191 A.3d at 787. Accordingly, we turn to Mother's preserved evidentiary challenges.

We review questions concerning the admissibility of evidence for an abuse of discretion. *See Klein v. Aronchick*, 85 A.3d 487, 491 (Pa. Super. 2017). "Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (citation and ellipsis omitted).

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "The well-settled test for relevancy states that evidence is relevant if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) (quoting Pa.R.E. 401). "If the trial court deems the evidence to be relevant, then the evidence should be admitted into the record and the court, as fact-finder, should assign that evidence the appropriate weight to which it is entitled in reaching its factual and legal conclusions." *Id.*

Further, Pennsylvania Rule of Evidence 106 provides as follows:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of

- 14 -

> any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time.

Pa.R.E. 106. The Comment to Rule 106 explains that its purpose "is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context." *Id.*, cmt. "The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part." *Id.* "The adverse party carries the burden of demonstrating that the remaining portion of the writing or recording is relevant." *Commonwealth v. Raboin*, 258 A.3d 412, 422 (Pa. 2021).

Here, after Father played the recording and moved for its admission, Mother objected that it was irrelevant to the name-change proceeding. N.T., 10/2/23, at 25. In denying Mother's objection, the trial court concluded, "it is clear to the [c]ourt this [recording] is relevant … [t]o [Father's] fears of abduction. They are his fears. I find his fears to be credible for him. He is worried that [Mother] would abduct the [C]hild." *Id.* Although the trial court advised Mother that it would reconsider her request to accept the full version of the recording into evidence if she deemed it necessary after her cross-examination of Father, Mother failed to renew her request. *See id.* at 14, 37-41.

Upon review, we conclude that the trial court did not abuse its discretion in admitting the recording. *See Klein*, 85 A.3d at 491. Mother's motive for

seeking Child's name change was clearly relevant to the trial court's "best interest" analysis. **See T.W.**, 127 A.3d at 828.

Concerning Mother's assertion that the full version of the recording had to be admitted into evidence, it is equally clear that she failed to meet her burden of establishing the remainder of the recording was relevant. **See Raboin**, 258 A.3d at 422. Mother did not question Father concerning the content of or circumstances surrounding the recording. Although, in her closing argument, Mother argued that the full recording would evidence her intent to **lawfully** take Child to Russia, she did not renew her request to submit the entire recording. Indeed, even at the subsequent hearing on Mother's motion for reconsideration, Mother did not offer the full recording. Instead, Mother supplied a five-page summary, which the trial court reviewed at her request. Therefore, in addition to Mother failing to establish the full recording's relevance, she suffered no prejudice as a result of its admission into evidence. **See Klein**, 85 A.3d at 491 ("To constitute reversible error, an evidentiary ruling must not only be erroneous, **but also harmful or prejudicial to the complaining party**." (emphasis added)).

In her fourth issue, Mother argues the trial court "allow[ed] an environment conducive to witness intimidation[, which] … significantly compromised the fairness and integrity of the judicial process." Mother's Brief at 21. Mother alleges the trial court's error in allowing this intimidating environment was so emotionally distressing that it caused her to

"inadvertently use[] the term 'major' in place of 'more,'" in reference to the "two major reasons" she sought Child's name change (discussed *supra*). ***Id.*** Mother concludes, "[t]he impact of such an environment on [] Mother's psychological well-being[,] and her subsequent ability to articulate arguments and evidence[,] effectively compromised the quality of the judicial process." ***Id.*** at 21-22.

The argument section of Mother's brief does not direct us to the place in the record where she was intimidated. However, in her statement of the case, Mother explains she "was experiencing such significant emotional distress from being intimidated and labeled a criminal that she was unable to clearly articulate her thoughts or organize her words effectively." ***Id.*** at 7.

Mother waived this claim by failing to lodge a timely objection. ***See*** Pa.R.A.P. 302(a); ***Jones***, 191 A.3d at 787. Even if preserved, we concluded, *supra*, that Father's allegation concerning Mother's threats to unlawfully remove Child to Russia was relevant and proper for the trial court's consideration. Consequently, the trial court did not err in permitting Father to argue that Mother's motive for seeking Child's name change was based on her desire to facilitate removing Child to Russia. Mother's fourth claim fails.

In her final issue, Mother argues the trial court "committed multiple factual errors." Mother's Brief at 22. Mother lists the following factual findings she alleges are unsupported by the record:

- "[T]he [t]rial [c]ourt erroneously determined that [ ] Mother's statements, as presented in the recording by Father, constituted a threat of child abduction." *Id.* (record citation omitted).

- "[T]he [t]rial [c]ourt erroneously determined that Mother did not seek to have [C]hild's name aligned with that of his half-brother[.]" *Id.* at 24.

- "[T]he [t]rial [c]ourt erroneously determined that [C]hild is [not] being bullied in school in regards to his last name being a female first name[.]" *Id.*

- "[T]he [t]rial [c]ourt erroneously determined that Mother was in default of her financial obligations[.]" *Id.* at 25.

- "[T]he [t]rial [c]ourt erroneously determined that [C]hild does not understand the concept of custody and his last name." *Id.* at 26.

The record belies Mother's assertions.

At the name-change hearing, Father testified that Mother threatened to permanently take Child to Russia on several occasions. *See* N.T., 10/3/23, at 33 (Father testifying that Mother "threatened me three times that [she was] going to take [Child] out of the country permanently."). Mother testified that she was not seeking to have Child's name exactly match Child's half-brother's hyphenated surname. *See id.* at 5 (Mother testifying that she wanted Child to have a "double last name"). Finally, Mother specifically testified that Child "still thinks[] that last name[s] for a child ha[ve] something to do with custody." *Id.* at 6. Although Mother did testify that Child was being bullied in school because of his surname, the trial court did not find her testimony credible. *See* Trial Court Opinion, 12/28/23, at 4.

Because the "resolution of factual issues is for the trial court," and because our review of the record discloses the trial court's factual findings are based on competent evidence, we discern no abuse the trial court's discretion. *T.W.*, 127 A.3d at 827. Mother's final issue entitles her to no relief.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024